GEORGE B. RIPLEY v. GEORGE F. CASE.

*Fraudulent sale—Assumpsit—Common counts—Recovery of money paid for worthless bond—Directing verdict.*

1. Money paid without consideration may be recovered under a declaration on the common counts for money had and received.
2. The abbreviation, " M. C. R. R.," is the recognized name of the Michigan Central Railroad.
3. The absence of past-due coupons is some indication that a coupon-bond is not in default.
4. If a bond is represented as belonging to a certain known kind, and has nothing in its general looks to raise suspicion, and if it is purchased honestly on such a recommendation, it is a fraud to so transfer it, if such representation is false.

So *held*, where the owner of a bond belonging to a series issued by the Michigan Air Line Railroad Company, and which was of no value by reason of the foreclosure of the accompanying mortgage, placed it in the hands of a broker for sale, representing it to be an " M. C. R. R." bond, which latter road had become liable on a series of bonds known as "Air Line" bonds, which were at a premium in the market. The bond left for sale bore a general resemblance to the Michigan Central bonds, and the past-due coupons had been removed. The broker made a sale of the bond, and on the fraud being discovered, and the owner refusing to refund the money, the purchaser brought suit to recover the same, and it is held that he made out a case for recovery, and had a right to go to the jury.

Error to Wayne. (Gartner, J.) Argued November 1, 1889. Decided November 15, 1889.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Barbour & Rexford*, for appellant, contended:

1. Substantial error between the parties to a contract of sale, concerning the subject-matter of the article, destroys the consent requisite to its validity; citing 2 Kent, Com. 471, 477, 479 (notes); 1 Benj. Sales, § 61 (note); *Gibson v. Pelkie*, 37 Mich. 380; *McGoren v. Avery*, Id. 120; *Ferguson v. Hemingway*, 38 Id. 159; and the present case is entirely within the principle of *Sherwood v. Walker*, 66 Mich. 568.

2. An illegal act, prejudicial to the rights of others, is a fraud upon such rights, although the parties deny all intention of committing a fraud; citing *Kirby v. Ingersoll*, Har. Ch. 191; and one who dissuades another from inquiry, and deceives him to his prejudice, is responsible; citing *Starkweather v. Benjamin*, 32 Mich. 305.

3. If one obtains the property of another by means of untrue statements, though in ignorance of their falsity, he must be held responsible as for a legal fraud; citing *Converse v. Blumrich*, 14 Mich. 123; *Beebe v. Knapp*, 28 Id. 75; *Stone v. Covell*, 29 Id. 359; and it is sufficient if they have the effect of fraud; citing *Mooney v. Davis*, 75 Mich. 188.

4. One who is sued for fraud is estopped from claiming that the plaintiff's previous knowledge was enough to protect him; citing *Hamilton v. Billingsley*, 37 Mich. 107

5. The principal is liable to third persons for the misrepresentations of his agent, in the course of his employment, although the principal did not authorize them; citing Story, Ag. § 452

6. Plaintiff is entitled to recover on the common counts for money had and received. The bond being worthless, the money was obtained without consideration; citing *Murphy v. McGraw*, 74 Mich. 318.

*Alfred Russell*, for defendant, contended:

1. In order to sustain this action in *assumpsit* on the common counts there must be a *privity* between the plaintiff and the defendant; citing *Jones v. Carter*, 8 Q. B. 134; *Calland v. Loyd*, 6 M. & W. 26: and, upon the testimony, there was none whatever, or any dealing between the plaintiff and the defend-

ant; the defendant simply wrote a letter to the carriage men (his creditors) in New York.

2. Besides rescinding and tendering back within a reasonable time, this Court hold that the plaintiff must declare *specially*, averring the tort and waiving it, in order to maintain the action of *assumpsit;* citing *Farwell v. Myers*, 59 Mich. 179; *Tregent v. Maybee*, 54 Id: 226.

3. Moreover, the bond sold is a *genuine document*, and the sale of it did not involve any warranty that it was collectible, and there was no false representation or fraud, and consequently the plaintiff took it for what it was worth, and an action in *assumpsit*, like the present, cannot be maintained; citing *White v. Robinson*, 50 Mich. 73; *Otis v. Cullum*, 92 U. S. 447.

4. Where the means of knowledge are at hand, and are equally available to both parties, and the subject of the purchase is present, and alike open to the view of both parties, and the purchaser does not avail himself of the means, or look at the property, or read the bond, he cannot be heard to say that he was deceived by the seller; citing *Picard v. McCormick*, 11 Mich. 68; *Collins v. Jackson*, 54 Id. 186; *Slaughter's Ad'r v. Gerson*, 13 Wall. 379.

5. Even if it had appeared that defendant had falsely alleged that the bond was worth $1,000, he would not be liable unless plaintiff had been fraudulently induced to forbear inquiry; citing *Parker v. Moulton*, 114 Mass. 99; *Simar v. Canaday*, 53 N. Y. 298; *Allison v. Ward*, 63 Mich. 137; *Development Co. v. Silva*, 125 U. S. 259; 3 Wait, Act. & Def. 441, 457.

6. It appears, on cross-examination of the plaintiff, that he knew that there was an office of the Michigan Central Railroad in New York city, and he says himself that any railroad man could tell all about the bond, and, having failed to avail himself of these means of investigation and verification, he will not be heard to say, in impeachment of the contract of sale, that he was deceived by the vendor's misrepresentation; citing *Gordon v. Parmelee*, 2 Allen, 214; *Johnson v. Taber*, 10 N. Y. 319; *Slaughter's Ad'r v. Gerson*, 13 Wall. 379; 3 Wait, Act. & Def. 441; and if the fact is one of which the party is equally capable of judging for himself, there can be no misrepresentation; citing *Bank v. Wilkinson*, 3 Sin. & M. 78; *White v. Seaver*, 25 Barb. 225; *Bell v. Byerson*, 11 Iowa, 233; *Fulton v. Hood*, 34 Penn. St. 365.

7. As to cutting off the coupons, that was no evidence of fraud. Each coupon is a piece of negotiable paper capable of separate ownership, and suable without production of, or being interested in, the bond; citing *Kennard v. Cass Co.*, 3 Dill. C. C. R. 149;

and the presence of the overdue coupons would not dishonor the bond, and the presence or absence is an immaterial circumstance; citing *Cromwell v. County of Sac*, 96 U. S. 51.

CAMPBELL, J. Plaintiff sued defendant for money had and received. The bill of particulars based the demand on a fraudulent sale of a worthless bond of the Michigan Air Line Railroad Company, upon the representation that it was a bond of the Michigan Central Railroad Company. The court below, without assigning any reason, took the case from the jury. The only question is whether the plaintiff showed anything to go to the jury.

As this is not an action for damages for fraud, but is to recover the whole consideration, as obtained from plaintiff for an absolutely worthless bond, we see no reason why the declaration is not good, if any such case was made as is relied on. The plaintiff's showing, for this purpose, must govern, whether contradicted or not. That was to this effect:

November 15, 1887, defendant wrote, requesting one J. W. Renwick, of New York, to take a bond of $1,000 left with him, and cut off and return the past due coupons. He was then to leave it with A. S. Flandrau & Co., who had a small debt against defendant, in order that they might sell it. Some reasons were given why defendant wanted to sell it. He stated he had nine more and thought they could be sold, and asked Renwick simply to say the bond had been left with him for safe-keeping. Renwick had held it since December, 1885. The bond belonged to a series issued by the Michigan Air Line Company, confined to a short section, of 35 miles, between Ridgeway and the Detroit & Milwaukee Railroad. It was issued in 1870, and the mortgage had been foreclosed, and the bonds had no value, or legal efficacy. Flandrau & Co. was a firm name of Keyes & Wilson.

The bond was handed to Keyes & Wilson. Defendant wrote to them on the day he wrote Renwick, telling them he had requested Renwick to hand them "a M. C. R. R. bond for $1,000," and saying, "if you can sell the same, please do so." This abbreviation, "M. C. R. R.," is the recognized name of the Michigan Central Railroad. That road had become liable on a series of bonds known as "Air Line" bonds, which were at a premium in the market, and the bond in question bore a general resemblance to the Michigan Central bonds. The absence of past-due coupons was some indication that it was not in default. In the letter to Flandrau & Co., defendant made the same statement as to Renwick that he had been buying a house and lot, and was a little hard up. Keyes & Wilson (or Flandrau & Co.) put the bond in the hands of a broker, showing him defendant's letter. There was a few days' delay in finding a purchaser, and on November 22, Keyes & Wilson wrote to defendant that the bond did not seem to be much known in New York, but that they had found a market for it, and could only get 3½ per cent. premium, because it had but two years to run. Defendant telegraphed to close the bargain, and send balance. It was sold to plaintiff, and proceeds accounted for. In answer to defendant's inquiry if more could be sold, he was answered in the negative, and advised to consult his banker, in Detroit. Plaintiff bought it on the representation of the broker that it was a Michigan Central Air Line bond. The testimony was legally sufficient to show that the broker represented defendant, and was informed that the bond was a Michigan Central security. It was a long instrument, which, if read through carefully, would have shown what it was issued for, and that it was on another road.

After the fraud was discovered, various efforts were

made by Keyes & Wilson, and by plaintiff, to make defendant refund, but he would not do so. Defendant introduced some testimony undertaking to explain how he got the bond, and how he got some others. We need not comment on it, as it might not have impressed the jury as he desired, and it was not for the court to accept, as we can hardly assume it was given any particular form in the decision, which rested either on the form of the pleading or on the absence of actionable fraud.

Unless plaintiff is barred from recovery because he did not read the bond, his testimony makes out a clear case. It is not customary in such transactions for dealers or purchasers to spell through every security offered for sale. If a bond is represented as belonging to a certain known kind, and has nothing in its general looks to raise suspicion, and if it is purchased honestly on such a recommendation, it is a fraud to so transfer it. There are many broken or worthless bills circulated which no one ever supposed to be any less fraudulent because genuine. Very few counterfeits would bear close inspection. They are circulated on their general good looks, and it is in that way the fraud is done. If defendant actually cheated plaintiff out of good money for a worthless bond, under circumstances which deceived, and were naturally calculated or intended to deceive, there is no reason why he should not be compelled to refund. We think the plaintiff made out a case for recovery, and had a right to go to the jury. Whether defendant's case was likely to help him, or what view might be taken of the testimony on either side, the jury, under proper instructions, will have to determine.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.