Case 102—PETITION ORDINARY—June 20.

# Trimble v. Ward.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

1. LIABILITY OF PRESIDENT OF BANK FOR FALSE STATEMENT AS TO CONDITION OF BANK.—In an action against the president of a bank to recover damages on account of plaintiff's purchase of shares of the bank from the defendant, who acted as agent for another in making the sale, the plaintiff alleging in her petition that she was induced to make the purchase by false statements made by defendant as to the condition of the bank, materially affecting the value of the stock, an instruction telling the jury that they could not find for plaintiff unless the statements were made by defendant with knowledge of their falsity, was more favorable to defendant than he was entitled to have, in that his liability was not, as it might have been, made to rest on any constructive knowledge or imputed knowledge by reason of his position as president, but was made to rest alone upon his actual knowledge. But the court having so held in behalf of defendant, it was proper to apply the same standard to plaintiff's agent, who was a director of the bank, which the court did by telling the jury that plaintiff could only recover on these statements, provided her agent, who made the purchase for her, did not at the time know or believe these statements to be untrue. The fact that he would, if he had exercised proper diligence, have known the statements to be false is not, under the circumstances, sufficient to prevent plaintiff from recovering.

2. SAME.—Even if the rights of the parties were to be determined by a question of diligence only, still the plaintiff's agent would have the presumption of law in his favor, as a higher degree of diligence is required of a president of a bank than of the other directors.

WOOD & DAY FOR APPELLANT.

1. The court should have told the jury to find for defendant on the ground that Tyler being a director of the bank was held to notice of its condition. (Boone on Law of Banking, sec. 85; United Society of Shakers v. Underwood &c., 9 Bush, 609.)

2. Where the means of knowledge are at hand and a party fails to avail himself of them, he can not maintain an action for deceit. (Cooley on Torts, p. 477; Bigelow on Fraud, p. 522; Wallace v.

Gerson, 13 Wall., 627; Fulton v. Hood, 75 Am. Dec. 664; Rockfellow v. Baker, 80 Am. Dec. 624; Cole v. Cassidy, 52 Am. Rep., 84; Mamlock v. Fairbank, 32 Am. Rep., 716.)

WM. H. HOLT on same side.

1. Not only is the knowledge that the law charged Tyler with chargeable to appellee, but she is chargeable with the means he had at hand to ascertain the truth or falsity of the alleged representation. And as the means of knowledge were equally available to Tyler as to Trimble, appellee can not complain. (Slaughter's admr. v. Gerson, 13 Wall., 379; Bell v. Byerson, 77 Am. Dec., 142.)
   Prewitt v. Trimble, 92 Ky., 176, and Day &c. v. Cunningham, 14 Ky. Law Rep., 112, distinguished from this case.
2. The error of the court in sustaining demurrer to the second and third paragraphs of the answer prevented appellant from presenting his side of the case to the jury. And even though the instructions were as favorable as he was entitled to, still that did not cure the error in sustaining demurrer to his defense, as he was thus precluded from proving the facts alleged.

TYLER & APPERSON for appellee.

1. There is really but one question in this case, and that is whether the fact of Tyler, appellee's agent, being at the time of the purchase of the stock from appellant also a director in the bank, alters the law as laid down in Prewitt v. Trimble, 92 Ky., 176, and Day v. Cunningham, 14 Ky. Law Rep., 112.
2. A man may act upon a positive representation of facts notwithstanding the fact that the means of knowledge were specially open to him, or though he had legal notice. (Bigelow on Fraud, p. 523.)
3. The principal is held only to have *constructive* knowledge of such facts as are in the *actual* knowledge of the agent at the time of the transaction. The agent must have such knowledge as can be *communicated* to his principal, and *imputed* knowledge can not be communicated. (Mechem on Agency, secs. 718, 721; Distilled Spirits Case, 11 Wall., 171; Willis &c., v. Valette, 4 Met., 186; Trentor v. Pothen, 24 Am. St. Rep., 225, and notes; Ford v. French, 72 Mo., 250; 7 Atl. Rep. (Pa.), 145; 1 Am. & Eng. Ency. of Law, 422; Bigelow on Fraud, 240.)
4. From the fact that appellant is held to constructive knowledge of the condition of the bank it does not follow that Tyler is also held to such constructive knowledge. A higher degree of diligence is required of the president of a bank than of the other di-

rectors. (Brannin & Co. v. Loving, 6 Ky. Law Rep., 331; Savings Bank of Louisville's·assignee v. Caperton, 87 Ky., 314.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

This is an appeal by J. G. Trimble from a judgment against him, rendered in the Montgomery Circuit Court, for eleven hundred dollars, in favor of Mrs. E. C. Ward.

This judgment was rendered upon a petition filed in that court by Mrs. Ward alleging, in substance, as follows:

That on the 15th of July, 1887, she purchased of the defendants, J. T. Day and J. G. Trimble, twenty shares of stock of the Exchange Bank of Mt. Sterling, Ky., at the sum and price of one hundred and twenty dollars per share. That at the time of this purchase J. G. Trimble was, and for some years prior had been, the president of said bank, and that at the time of this sale Trimble exhibited to her agent, M. S. Tyler, who made this purchase, the last semi-annual statement, published by said bank, of date June 30, 1887, showing the condition of this bank at that date; its assets, including its loans and discounts, overdrafts, surplus, undivided profits, etc., as well as its liabilities. And that Trimble then represented that statement to be correct, stating that all its bad debts had been charged off, except a very small amount, affirming it to be the best bank in Eastern Kentucky, and that its assets were worth dollar for dollar.

Plaintiff further charges that she did not know the true financial condition of said bank, nor had she any other means of ascertaining same, other than from the published statements of said bank; and that in making this purchase she relied upon these statements, both by the bank and the personal statement of defendant, Trimble, as being true.

Plaintiff further charges that said bank statement was

incorrect, and false, and that defendant Trimble's statements were not true, and that defendant Trimble knew at the time that they were incorrect and untrue.

That in fact the solvent resources of said bank were not as much by thousands of dollars as shown by this statement, that it really had no undivided profits, and that the stock of said bank was not then really worth more than sixty-five dollars per share.

Plaintiff says by reason of these false and fraudulent statements, she was induced to make the purchase and that by reason thereof, she has been damaged in the sum of eleven hundred dollars.

Defendant Day was not brought before the court.

The defendant Trimble filed his answer, denying all the material allegations of the petition.

And on a trial by a jury the verdict was for the plaintiff in the amount stated.

In addition to the denials filed by Trimble, he also set up in his answer that M. S. Tyler, the agent of plaintiff, who made this purchase, was also a director in said bank at the time that he signed the statement of June 30, 1887, and that said Tyler had ample opportunity to know the condition of said bank.

It will be observed that defendant Trimble being at most only the agent of defendant Day in negotiating the sale of this stock, and having at the time of the sale disclosed his principal, and having no interest in this sale, he can only be held liable in an action for deceit, the essential elements of which are a false and fraudulent statement of the condition of said bank. And that Trimble had knowledge, either actual or constructive, that the statements were untrue at the time he made them.

The petition is framed on this line, making these aver
ments.

The same line of liability was likewise submitted by the
court to the jury in an appropriate instruction, same being
as follows: "The court instructs the jury that if they be-
lieve from the evidence that about July 15, 1887, the defend-
ant, Trimble, as agent for his co-defendant, Day, sold and
transferred to the plaintiff, through her agent, Tyler, twenty
shares of stock in the Exchange Bank at Mt. Sterling, Ky.,
at the price of $120 per share, and that at the time of the
sale of said stock, or during the pendency of the negotia-
tion for the sale of same, the defendant Trimble referred to
the published statement of the bank of date of June 30,
1887, in which the resources of said bank were stated. . . .
And represented and stated to plaintiff's agent, that said
bank statement was correct, and that all the bad debts had
been charged off, except a small amount, and that the as-
sets were worth dollar for dollar; and if they further be-
lieve from the evidence, that said statements and represen-
tations were made to plaintiff's agent, with the intention
that plaintiff's agent should rely on same, and that he did
rely on them in making the purchase; and if they further
believe from the evidence that said statements, if made,
were untrue, and were known and believed by Trimble to be
untrue, to a material extent, either that the assets were not
worth dollar for dollar, or in any other respect, which, in a
material degree, decreased the amount of the good and
solvent assets of said bank, or increased its liabilities. And
said statements were not known to or believed by plaintiff's
agent to be untrue at the time of the purchase of said stock,
then they should find for the plaintiff, the difference, if any,
between the value of the stock bought by plaintiff, through
her agent at the time of the sale, if said statements were

false, and its value at the time of the sale if said statements
and representations had been true, not exceeding eleven
hundred dollars.   And they may or may not, in their discre-
tion, give interest at the rate of six per cent. per annum
from the time of the sale.

2d.  Unless the jury believe, from the evidence, that the
defendant made the statements and representations, as set
out in the first instruction, at the time of the sale, or during
the pendency of the negotiation for a sale, and that said
statements or representations, as made, were untrue and
known or believed by defendant to be untrue, then they
should find for the defendant.

Thus it will be seen that the court below made the liabil-
ity of defendant Trimble  depend solely on the two facts:
First, as to whether these statements and representations,
if made, were untrue in point of fact, and whether the de-
fendant knew them to be untrue at the time they were made.
There was no confusion and no uncertainty in the law, as
submitted by the court.

The liability of the defendant was not made to rest on any
constructive knowledge, or any imputed knowledge, by rea-
son of the position as president, which he occupied, but
upon his actual knowledge.   And this exposition of the law
was, we think, more favorable to the defendant than the
court, under the facts, would have been authorized to lay
down.

But, having so held, in behalf of defendant, it was quite
proper that only the same rule or standard should be ap-
plied to plaintiff's agent, Tyler.   And this was done by the
court in saying to the jury that plaintiff could only recover
on these false statements, provided, Tyler, her agent, did
not, at the time, know or believe those statements to be

Trimble v. Ward.

untrue. That this would have defeated a recovery by plaintiff.

And the jury, when this question of actual knowledge was submitted to them by the court, as to both parties—Trimble, as agent for his son-in-law, Day, in making the sale, and Tyler as agent for his kinswoman, Mrs. Ward—found that Trimble had this knowledge and Tyler did not, and the damage being clear, they found for plaintiff.

If this were a question of diligence only, whereby the rights of these parties were to be determined, as we think it is not, yet in this, plaintiff's agent would have the presumption of law in his favor.

This court has held in cases Brannin & Co. v. Loving, etc., 6 Ky. L. R., 331, and Savings Bank of Louisville's Assignee v. Caperton, 87 Ky., 314, that a higher degree of diligence is required of a president of a bank than of the other directors. And he stands in a different attitude, even where there is no evidence of *mala fides* on his part, and no motive of personal gain can be imputed to him.

So that, it would not be at all consonant to justice or authority, where actual knowledge has been required to be shown before the defendant can be held liable, thus to as-sert that if plaintiff's agent had been guilty of negligence only, and did not, in fact, know as much about the actual value of this stock as he should have known that, therefore, the court or jury would punish his client, who is confessedly ignorant of all these matters, by compelling her to take and accept the stock in this bank at a price nearly double its value.

We have just reversed two cases, at the instance of appellant from the same court, because the court did not submit this question of knowledge of these errors and false statements to the jury for their consideration. And now

Trimble v. Ward.

when we find, as in this case, that it was properly submit-
ted, and found against him by the jury, we are constrained
to hold that the law has been correctly administered in this
case.    And that while the court would not suffer defendant
Trimble  to be presumed guilty, simply because he was pres-
ident of the bank, neither will it presume or instruct the
plaintiff out of court, simply because Tyler, plaintiff's agent,
was a director in this bank.

This rule must, in these cases, work both ways.

Upon this question of notice on the part of Tyler, and of
the effect of same, and of knowledge imputed to him, counsel
for both sides quote from Mr. Bigelow on Fraud.    By ap-
pellant this author is quoted, p. 522, as saying:  "All the
cases upon this aspect of the subject fall, as before, under
the 'means of knowledge.'   It has, indeed, been laid down as
a broad proposition of law, that if the means of knowledge
be at hand and equally available to both parties, and the
subject of the transaction be open to both alike, the injured
party must avail himself of such means, if he would be
heard to say that he was deceived by the representation of
the other party, unless there was a warranty of the facts."

And, yet, this same author is quoted by counsel as saying
on the next page, 523:    "But there is serious ground for
doubting the correctness of this proposition in its broad
form . . . . Recent authority has, however, gone far to-
wards setting the matter right in principle.   The proposition
has now become largely accepted, at law as well as in
equity, at least as general doctrine, that a man may act
upon a positive representation of facts, notwithstanding the
fact that the means of knowledge were specially open to
him, or though he had legal notice, as, for example, in the
public registry, of the real state of things. If the represen-
tations were of a character to induce action, and did induce

it, that is enough; for it is not just that a man who had deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or, 'You, yourself, were guilty of negligence.' This, indeed, appears to be true, even in cases in which the injured party had, in fact, made a partial examination."

Here, this author may be said to get back to sound principle of good faith and honest and fair dealing between man and man, and; practically, to ignore the idea that because a man may have been guilty of some negligence, and may not, in fact, have the knowledge of the transaction that he ought to have had, yet he may be regarded fairly within the law, as a legitimate and helpless subject of imposition and wrong.

The view taken by the court below was the correct one, making the validity of this transaction depend upon the actual knowledge of each, and on a submission on this line the jury found that appellant had the knowledge of the untruth of these bank statements, and that Tyler, the agent of appellee, did not. In fact, it is almost impossible to conceive that Tyler did, in fact, have this knowledge of the falsehood in this bank statement, to the extent developed by the evidence, showing this stock to have been worth but little over half the contract price, and yet that he bought same at $120 per share, for his kinswoman. Such conduct, if possible to conceive, would border closely on the criminal side of the law.

The jury evidently did not believe the imputation as to Tyler. And while the general doctrine, "that the knowledge of the agent may be imputed to his principal," is doubtless correct, yet here the very thing in issue, "the knowledge of the agent" was found not to exist. So that there was nothing, in fact, to be imputed to his principal.

Another objection is made, that the court below erred in sustaining a demurrer to the second and third paragraphs of defendant's answer. We perceive no error. They were at best only repleading what was sufficiently pleaded in the first paragraph, or reciting evidence which could properly have been heard, and which was, in fact, heard, on the trial, under the general issue formed by the denials in the first paragraph of the answer. We perceive no error in this case authorizing its reversal.

Wherefore, the judgment is affirmed.