CASE 36—ACTION BY COMMONWEALTH AGAINST W. B. ROARK AND OTHERS AS SURETIES ON A BAIL BOND.—OCT. 9.

# Commonwealth v. Roark, &c.

APPEAL FROM ALLEN CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND COMMONWEALTH APPEALS. REVERSED.

BAIL BOND—DISCHARGE OF SURETY—RELEASE OF CO-SURETY—WAIVER OF DEFECTS.

Held:    1. Where a surety acting under a power of attorney from his co-sureties executes a bail bond knowing that a co-surety had not properly executed the power, and that the official taking the bond had no knowledge of the defective power, the other sureties can not claim release from liability because such co-surety was not bound; since the bond having been executed by their representative with knowledge of the defective power, they waived any informality in the execution by the co-surety.

N. A. PORTER, FOR APPELLANT.

In presenting a power of attorney signed by three and falsely purporting to have been signed by the fourth, "M. G. Brown," W. B. Roark practiced a fraud upon the court and he can not escape liability by his own fraud.

W. B. Roark's knowledge of the fraud at the time of the ex-
ecution of the bond is imputed to those who have authorized
him to act as their agent and none of them can escape.

To such as gave the unconditional power of attorney prior to
the signature "M. G. Brown," the unauthorized name subse-
quently added was a mere nullity, neither conferring authority
nor taking any already existing away.

Those subsequently signing to "M. G. Brown," guaranteed
the genuineness of M. G. Brown's signature. Wheeler v.
Traders' Deposit Bank, 21 Ky. Law Rep., 1416.

W. B. Roark claiming to act under a power of attorney, guar-
antees the genuineness of the signature thereto.

This case distinguished from Commonwealth v. Belt, 21 Ky.
Law Rep., 339.

This case is on all fours with Wheeler v. Traders' Bank, 21
Ky. Law Rep., 1416.

It does not lie in any principal's mouth to claim a release
by the fraud of his duly constituted agent, and all who author-
ized W. B. Roark to act as their agent in the execution of the
bond guaranteed the good faith of their agent and the genuine-
ness of every signature.

W. B. GAINES, FOR APPELLANT.

There are three reasons why the court should hold these
sureties that did sign the bond:

1. There being no condition in the power of attorney that
Brown should sign the bond, certainly as to such of those sure-
ties as signed before the name "M. G. Brown" was signed, as
to them the name of M. G. Brown, having been signed by W.
B. Roark without authority was merely superfluous and of no
binding authority on him, nor could its purporting to have
been signed by M. G. Brown thereafter have had the effect to
withdraw from W. B. Roark the unconditional authority given
him previously. To such as signed after the name "M. G.
Brown," the signing of the bond by them was a guaranty that
those names appearing before theirs were genuine signatures, so
that under any conditions no party to the power of attorney
could plead any infirmity because of the name "M. G. Brown."

2. This court has steadily refused to recognize any difference
between the sureties to a bail bond and to any other obligation
and the distinction between the case at bar and the Belt case,
supra, was clearly drawn in Wheeler v. Traders' Deposit Bank,
21 Ky. Law Rep., 1416, and there the case was presented where
the name above the appellant's was a forgery. This court said:
"Wheeler signed the note as surety, and in doing so guaranteed

to the bank that every preceding signature was genuine." In this case the name of "M. G. Brown" was a forgery in the sense that it was a false representation of fact, and in fact was a fraud, though, perhaps, not so intended by the boy who signed it. It was a forgery, but not punishable. The two cases cited recognize that principle of commercial law that while there is a warranty of soundness, if the horse has only three legs and the buyer sees it, the warranty that he had four is unavailing. So far as W. B. Roark is concerned there can be no doubt if this case is followed he must be held.

3. While the law is being conceded against our contention, it must also be admitted in our favor, and it is as old as the eternal hills that the knowledge of the agent is the knowledge of the principal. It must be conceded that W. B. Roark was the agent of the sureties in the execution of this bond. It must be conceded that he knew that M. G. Brown did not sign the power of attorney. It inevitably follows, therefore, that at the time and before the execution of the bond these sureties knew that "M. G. Brown" did not sign the power of attorney. It must be conceded that the county judge did not know that M. G. Brown had not signed in person. It must be conceded that the defect in the instrument did not appear upon its face and was a latent defect and such as the warranty of genuineness therefore covered. As a matter of fact when W. B. Roark presented that power of attorney to the county judge with "M. G. Brown" signed in writing thereto it was in law, in fact and in good morals a representation that the words "M. G. Brown" was the true and genuine signature of M. G. Brown.

### AUTHORITIES CITED.

Terry & Bell v. Hazlewood, 1 Duvall, 104; Jones v. Shelbyville, &c., Co., 1 Met., 58; Hall v. Smith, 14 Bush, 604; Com. v. Magoffin, 15 R., 775; Wilson v. Louisville, 16 R., 340; Com. v. Yarbro, 84 Ky., 496.

W. C. GOAD, ATTORNEY FOR APPELLEE.

This is an appeal by the Commonwealth against W. B. Roark, &c., from a judgment of the Allen Circuit Court, sustaining a response of sureties in the bail bond of one John Roark, on which a forfeiture was taken, and which bond was taken by the examining court by what purported to be a power of attorney.

The power of attorney contained the name of one Brown, whose name was signed and accepted by the examining court as surety on said bond, and the response by him alleged that he was engaged at work at his mill when approached to become

surety on .said bond, and agreeing to sign same, with Roark's father et als., told his son, who was standing by, to sign his name to the power of attorney, which the son did in pursuance to said verbal authority, and a forfeiture having been taken on said bond, so signed, Brown responded, claiming as defense that he was not bound on the bond, as he did not give the son nor any one written authority to sign his name to the power, of attorney or the bond. The court having heard the proof, which amply sustained this contention, rendered judgment exonerating the sureties, and from that judgment this appeal is prosecuted.

It has been so often held by this court that a surety is not bound upon his undertaking unless he either signs the instrument or the authority to an attorney in fact, that I do not deem it necessary to cite any special case. This signing, or this authority, as I understand the law, can not be delegated to another, except in writing, and as the record shows conclusively that the authority in this case was never given to any one by Brown, surety, in writing, I respectfully ask that the judgment in this case of the court below, be affirmed.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

John Roark, being in custody before the county judge of Allen county charged with a felony, was admitted to bail by that magistrate for his appearance before the Allen circuit court to answer any indictment that might be found against him growing out of the charge. Appellee, W. B. Roark and others undertook as his bail, in a bond executed before the county judge, that he would so appear; but he defaulted. In a suit upon the forfeited bail bond, one of the sureties, M. G. Brown was discharged, because it was conclusively shown that he did not in person sign the bond, or by a writing signed by him authorize another to sign his name to it. Section 482, Kentucky Statutes, 1899; Billington v. Com., 79 Ky., 400, 3 R. 19. The other answering sureties, appellees W. B. Roark and J. M. Braswell, claim that they were released because Brown was not bound. The circuit court discharged them. The facts are, so far as necessary to understand the point to be decided, that

W. B. Roark was by a written power of attorney, apparent-
ly signed by all the other sureties, and in fact so signed ex-
cept by Brown, authorized as such attorney in fact to sign
the names of the sureties to the bail bond. W. B. Roark
was present when M. G. Brown agreed to sign the bond
as a surety. But instead of signing his name to the paper
(the power of attorney), he requested his son, who was
present, to sign it for him, which was done. This was
known to W. B. Roark. None of the sureties except W.
B. Roark appear to have been present when the bond was
executed before the county judge. It was not shown that
the county judge knew that M. G. Brown had not in person
signed his name to the power of attorney. Now, can it be
that W. B. Roark and the other sureties, whom he was rep-
resenting as their agent in that matter, are released from
liability because Brown was not bound? There is a line of
cases decided by this court, notably Com. v. Magoffin, 15 R.,
775, 25 S. W., 599; Wilson, Rec'r, v. Linville, 96 Ky., 50, 14
R., 150, 16 R., 340, 27 S. W. 857; Com. v. Yarbrough, 84
Ky., 496, 8 R., 483, 2 S. W., 68; and Com. v. Belt, 21 R., 339,
51 S. W., 431—which go to the extent that where the county
judge or other official representing the Commonwealth,
knowingly permits an incomplete bond to be accepted, as
where some of the sureties' names were signed by others
without written authority from such obligors, none of the
sureties will be bound. And this, too, notwithstanding
that all the sureties were present, and saw the bond exe-
cuted as it was, and notwithstanding that in law it is com-
petent for a surety to waive the execution of the bond by
one who had been named therein as his co-surety. In all
of those cases the officer representing the Commonwealth
knew that some of the sureties named in the bond had not
signed it, or knew that some whose names were signed by

others had not written authority to do so; at least knew
that no such authority was exhibited or filed. Nothing ap-
pears in those cases to show that the sureties signing in-
tended to waive the due execution of the bond by the others
named in it, or that they were aware that the official had
not fully complied with the law in requiring the due execu-
tion of the bond. From those facts the court argued that
the other sureties had a right to presume that the official
taking the bond had proper assurance that those signing it
for others had legal authority to do so, so as to bind them.
None of these cases hold, of course, that any one can pre-
sume anything to the contrary of his own actual knowl-
edge. But this case goes beyond anything in any of those
cited. The sureties here, excepting Brown, had by a valid
paper appointed another to act in their stead and for them
in this transaction. Under familiar and salutary principles
of the law of agency, when one elects to act by an agent, the
knowledge of the latter, acquired or in mind, in that trans-
action, is conclusively imputed to such principal. Other-
wise, it would be safer to the principal to always act by
agent, for the agent's guilty knowledge—perhaps the
scienter of an action based on the contract made by him—
would not affect the principal, though he might profit by
the agent's act. Trimble v. Ward, 97 Ky., 748, 17 R., 508,
31 S. W., 864. This matter is well stated by Lord Broug-
ham in Kennedy v. Green, 3 Myl. & K., 699, who says that
the reason of this rule is that the "policy and safety of the
public forbid a person to deny knowledge while he is so
dealing as to keep himself ignorant, . . . and yet all
the while let his agent know, and himself perhaps profit
by that knowledge." W. B. Roark knew exactly how the
power of attorney was executed by Brown; the county
judge did not know. W. B. Roark appears to have con-

cealed from the county judge the truth as to how the paper was executed, or, what amounts to the same thing, had presented it as genuine when he knew it was not. His act, being for himself and his co-sureties, was equivalent to a representation by each of them that the paper was the genuine signature of Brown, or, at least, they were willing to waive his executing the bond otherwise. They could have waived Brown's signature altogether. They can estop themselves, too, from denying that his signature to the power of attorney was genuine. When one surety says to the official taking the bond, "I know all the facts relating to the signing of the power of attorney by my proposed co-surety. I assure you that he has signed the power of attorney, and request you to accept the bond under that signature of his and of my own, made with full knowledge of the circumstances, and thereupon to release the prisoner," such surety has waived any informality in the execution of the bond by his co-surety. It is also, if acted upon, a good estoppel against his afterward denying the validity of his co-surety's signature. The action of W. B. Roark was tantamount to such assurance.

The judgment is reversed, and cause remanded for a new trial, under proceedings consistent herewith.

Chief Justice Burnam dissents. Judge Paynter not sitting.