Cunningham, J.
The facts in this case, so far as we deem them important, are substantially as follows: Pallister, the appellant, defendant below, purchased a dairy from Camenisch, appellee, plaintiff below, inducing Camenisch to accept as part payment for said dairy a promissory note for $2500, payable to Pallister and signed by Benjamin W. Ladd and S. D. Moss. The note was taken by Camenisch at its face value, with the accrued interest, and Pallister was given credit on the purchase price of the dairy for the amount. The note was endorsed by Pallister, “without recourse, ” and delivered by him to Cameniseh. Up to this point the facts are undisputed. On substantially all other questions of fact the evidence is in sharp conflict.
*80 Appellee contends that appellant represented that Moss was a naan of large means, abundantly solvent, and owned valuable real property in this city, and in Ottumwa, Iowa, where appellant had known Moss for many years. In his -complaint' appellee makes these statements as to Moss’s financial responsibility,, and their alleged falsity, the basis of a suit in damages against appellant, said complaint containing the usual allegations necessary to a statement of a cause of action in decéit. The answer is a general denial. At the trial there appeared to be no dispute whatever as to the insolvency of Ladd and Moss, the makers of the note, both at the time the same was transferred to appellee, and at the time of tfie bringing of this action. Plaintiff introduced testimony that clearly established the insolvency of the makers of the note, while the defendant made no effort whatever to contradict the same.
The briefs are limited to the discussion of two questions, and we shall accordingly limit our consideration of the case. The first cause of action, (the only one we shall consider), is based on wilful or actual fraud. In it, plaintiff charges defendant with liability, because of wilful and fraudulent misrepresentations made by the defendant, and deceit practiced by him upon the plaintiff.
Counsel for appellant in their brief contend, first, that since Pallister endorsed the note, “without recourse,” he thereby made it plain that he would not be responsible for its payment; that such an endorsement constituted a written contract, and measured his full obligation, or rather, worked his release from all further obligations in the premises. In other words, it is contended that in writing he *81 declined to be bound in any way for and on account of tbe note. Hence, they say, to attempt to hold him liable by reason of any oral statement that be may bave made at or before tbe date of tbe transfer, would be to vary tbe terms of a written contract by oral agreement. Appellant further contends that be ought not to be held liable for any misrepresentations be may bave made to appellee, for tbe reason, as be says, that appellee, having undertaken to investigate and ascertain for himself tbe financial condition of the maker of tbe note, and no artifice being used to prevent such investigation from being full and complete, tbe conclusive presumption is that appellee relied upon tbe result of bis own investigations rather than upon appellant’s statements. Neither of these arguments impress us as being sound under tbe law applicable to this case, and tbe facts disclosed on tbe trial. In appellant’s brief appears tbe following: “That bis, (appellant’s) endorsement of a negotiable instrument, whether tbe endorsement be general or qualified, is a full and complete contract with full and complete agreements as to tbe covenants of tbe endorser, and is not subject to be varied or attacked by parol evidence.” This statement, and tbe authorities cited in support thereof, bave no application to the case at bar. If appellee bad sued appellant as endorser of the note, or by reason of the fact that he had endorsed it, then tbe statement quoted, and tbe authorities cited, would be applicable. To illustrate: Had Moss’s financial condition at tbe time tbe alleged false representations were made, been substantially as represented by appellant, but thereafter, through adverse circumstances, be bad lost bis *82 fortune and been reduced to the state financially in which he really was at the time these representations were made; or had Moss refused, through dilatoriness, or from other ulterior motives, to pay the note when it became due, the endorsement of appellant, “without recourse,” would have barred recovery against him. Under the state of facts assumed here by way of illustration, the contention of appellant and his authorities would be sound. But we have no such case before us. It may be conceded that had appellant, before or at the time of endorsing the note, said to appellee: “Now, I am going to endorse this note ‘without recourse,’ but, nevertheless, if the defendant does not promptly meet his obligation and take up the note at maturity, I will, notwithstanding I have endorsed the note ‘without recourse,’ see that you are paid,” the appellant could not have been held liable by reason of such oral undertaking or statement, but it by no means follows from this concession that one may make false representations concerning a material fact affecting the value of a note which he Is seeking to negotiate, and then escape responsibility for his representations simply by writing the words, “without recourse,” after his endorsement.
Wp perceive no reason, either in law or in common sense, why one who makes false representations concerning the payor of a promissory note for the purpose of giving to the note he is attempting to negotiate a false or fictitious value, ought not to be held responsible for his statements in all respects as though such statements had been made of and concerning real estate or personal property of any character. To so hold does not involve the doctrine *83 of. the law merchant or the provisions of onr negotiable instrument act, as counsel for appellant seem to think.
We are bound to consider the testimony introduced on the trial in the light most favorable to appellee. We must, therefore, assume:
(a) That appellant represented, to appellee that Moss, the maker of the note, was a man of large wealth, and that he owned valuable property, both in this state and the state of Iowa, whereas, in truth and in fact, he owned no property whatsoever.
(b) That appellee was not aware of the falsity of this misrepresentation.
(c) That he acted on such misrepresentation, and but for same would not have accepted the note.
(d) That when he discovered the falsity of these representations, he communicated his knowledge to appellant, and offered to return the’ note and the cash he had received for the dairy, which offer appellant declined to consider.
Appellant’s counsel make no complaint in their briefs: (a) As to the size of the judgment; (b) as to the instructions given or refused by the trial court, except as to the instruction tendered by appellant asking that judgment go in his favor; (c) as to any error committed by the trial judge in the admission or rejection of testimony.
Further, we must, under the rule above announced, assume that no investigation whatever was undertaken by appellee with reference to the solvency of Moss, and that that matter did not come up for discussion until at the crisis in the negotiations, when all parties, with their counsel, had met for the purpose of transferring the property and *84 closing the transaction. Appellee and witness Andrus both so testified. At that time, that is, at the time the parties met for the purpose of completing the transfer of the dairy, appellant, under the testimony given by appellee and supported, in the main, by witness Apdrus, and which the jury, under the instructions, which were especially favorable to the defendant, must have believed, deliberately lied to appellee with reference to property he claimed Moss owned in a foreign state, and made representations with reference to Moss’s solvency that were absolutely false; and, since he makes no attempt to justify, but rather flatly denies having made such statements, we must assume that he knew of the falsity of his statements.
Further, in order to allay appellee’s suspicions, appellant represented, at the time in question, that he, appellant, really did not desire to let the note go, and would take it up himself in a few months, with money he was to receive from the east — this, doubtless, for the purpose of further reassuring appellee as to Moss’s solvency. Many other statements were made by Pallister, if we credit appellee’s testimony produced on the trial, such, for instance, as that ‘Moss was as good as Moffat; that the note in question was as good as a government bond; that it was Better than cash in that it drew 10% interest,’ etc., etc.
Stripped of its verbiage, and disregarding all specious and subtle reasoning, the situation is simply this: Pallister received valuable property from Camenisch for a worthless piece of paper; his false representations led appellee to conclude that the paper was worth its face; but for these false represent *85 ations, appellee would not have closed the transaction and accepted the note. Under these circumstances, does the law permit Pallister to retain the property and force Caminsch to keep the worthless paper? We think not. True, Oamenisch appears to have foolishly disregarded the advice of his attorney, and it is probable he might have ascertained by inquiring of Moss, that Pallister’s • statements were false. But Pallister may not profit by reason of the unjustifiable confidence which he fraudulently inspired in Camenisch.
Decided January 8, A. D. 1912.
Rehearing denied March 11, A. D. 1912.
Our conclusion in this respect finds support in the following cases:
Heagy v. Umberger, 10 S. & R. 343; Trimble v. Ward (Ky.), 31 S. W. 864; Clark et al. v. Rankin, 46 Barbour 570; Thorne v. Prentiss, 83 Ill. 99; Jackson v. Collins, 39 Mich. 558; Ripley v. Case, 86 Mich. 261; see same case in 78 Mich. 126; Milks v. Rich, 80 N. Y. App. 269; King v. Summitt et al., 73 Ind. 312; Bruce v. Burr, 67 N. Y. App. 237; Sturges & Co. v. Bank of Circleville, 11 Ohio State 153, at 170 et seq.
Perceiving no prejudicial error in the record, the judgment of the trial court is affirmed.

Judgment Affirmed.

Walling, Judge, not participating.