## Kreate v. Miller et al.

(Decided November 23, 1928.)

### Appeal from Kenton Circuit Court.

1. Fraud.—Purchasers may be bound to vendors on their contract to purchase, procured by deceit of vendors' broker, and still have a cause of action in deceit against broker.

2. Fraud.—In purchasers' action against vendors' broker for deceit in inducing them to execute land contract, trial court did not err in refusing to submit or decide question of broker's claim for commission against vendors under Civil Code of Practice, sec. 96, subsec. 3, since claim for commission neither affected nor was affected by original cause of action.

3. Fraud.—Deceit is a willful injury, and ordinarily in cases of willful injury law imposes no duty of care on the victim.

4. Fraud.—Persons signing contract cannot rely on statements of the other party as to its contents, and, failing to read instrument, avoid contract, unless representations are not only untrue, but made under such circumstances as would probably deceive one exercising ordinary care.

5. Fraud.—Whether a person fails to exercise ordinary care in failing to read a contract he is called upon to sign, may depend upon the confidence which he is entitled to place in the person securing his signature.

6. Fraud.—In purchasers' action in deceit against vendors' broker, evidence held to require submission to jury of questions whether broker induced purchasers to sign land contract requiring price to be entirely in cash by representing to them that vendors would accept part cash and mortgage for balance, and, if so, whether purchasers exercised ordinary care in signing contract without reading it, and purchasers therefore were not entitled to peremptory instruction.

7. Fraud.—In purchasers' action in deceit against vendors' broker, instruction merely stating that, if purchasers signed land contract calling for cash payment, relying on broker's representations that

vendors would take mortgage for part of price, they were entitled to recover, held erroneous in omitting element of whether purchasers exercised ordinary care in signing contract without reading it.

8. Pleading.—"Departure," in pleadings prohibited by Civil Code of Practice, sec. 101, occurs only in a reply or subsequent pleading, and not as between original and amended petitions.

9. Pleading.—In view of Civil Code of Practice, sec. 134, plaintiffs had right, if truth justified it, to amend their petition stating action of deceit by stating facts inconsistent with those set up in original petition, where cause of action was not thereby changed.

NORTHCUTT & NORTHCUTT and LULA A. NORTHCUTT for appellant.

O. M. ROGERS for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In this action for deceit, the plaintiffs were successful, and the defendant appeals.

In December, 1924, E. A. Grant and his wife listed a farm they owned in Boone county with the appellant, a real estate agent, for sale. The appellant duly advertised it. The appellees who were looking for a farm saw this advertisement, visited the farm, and being satisfied with it, decided to buy it. Thereupon the appellee Criswell went to see the appellant about the place, and found that it was listed at $16,800. Appellant ascertained at this time that the appellees did not have in excess of $500 cash on hand, but that they owned realty and a small amount of personal property all approximating in value $7,000. After some negotiations, the appellees on January 31, 1925, signed a written proposition directed to the Grants, in which they offered to buy this farm for $14,000 cash. Just prior to the making of this written proposition, the appellant and the appellees had made arrangements with a nearby bank, whereby that bank had agreed to lend the appellees, in the event the deal for the Grant farm went through, the sum of $8,000, to be secured by a mortgage on the farm. The banker testifies that, at the time these arrangements were being made, it was stated to him, either by the appellees or by the appellant, in their presence and hearing, that the purchase of the Grant farm was to be a cash transaction. It also appears that, before the appellees signed the offer of January

31st, they had listed the realty which they owned with appellant for sale. A careful search of the record discloses no claim on the part of the appellees that they were in any wise misled into signing the offer of January 31st, or that they did not thoroughly understand the offer to be one for cash.

This offer of January 31st was declined by the Grants, but at the same time they indicated that they would take $15,000 net for the farm, which, when appellant's commission was added to it, brought the price up to $15,750. The appellant communicated this fact to the appellees, and on February 2, 1925, they came to his office and there signed another proposition which the appellant had prepared, offering to buy this farm for $15,750. They testify, however, that, when they signed this proposition, the appellant represented to them that the terms of the purchase as set out in the proposition were "$8,000 cash and time for the rest." The appellees are silent, however, as to what the terms for the unpaid portion of the purchase price were to be. The proposition as actually prepared by the appellant and signed by the appellees provides for a cash purchase. This proposition has been brought to this court, and the word "cash" is written in such fashion on the paper that a most cursory reading of the document would have brought home to the appellees the fact that it provided for a cash transaction.

Appellant denies that he made any such representation to them as they say he did. He testifies that it was thoroughly understood all along that the offer was to be for cash, and that he so told them on this occasion. He is supported in this by his stenographer, who was present when the appellees signed the paper dated February 2d. At the time the appellees signed it, there was a long counter or table of appreciable width between the appellant and appellees. They do not claim that the appellant misread the paper to them, but only that he misstated its purport. Indeed, only one of the appellees clearly so testifies. The testimony of the other is very confused, evasive, and had to be dragged out of him by questions flagrantly leading. The appellees do not claim that they were not afforded an opportunity to read the paper had they so desired, and they both admit that they could read and write. One of them says that he "kinder" read the contract, and in so doing saw that the purchase price

was to be $15,750. It is very difficult, on inspecting the original paper, to understand how, if he read this much, he did not see staring him in the face the word "cash" in bold letters immediately under the figures mentioned. At the same time when the appellees signed this proposition, they deposited with appellant the sum of $500 as earnest money. This proposition of February 2d was duly submitted to the Grants by the appellant, and was accepted by them.

When the time came to close the deal, the appellees, not yet having disposed of their real estate, were unable to comply with their proposition as written. A dispute arose between them and the Grants; the appellees claiming that the written proposition they made should have embraced the terms they say appellant represented were in it when they signed it, while Grant claimed that the appellees were bound by the offer as presented to him. At all events, without the knowledge or consent of the appellant, Grant and the appellees entered into a contract mutually releasing each other from the contract dated February 2d and assigning to the appellees any claim Grant had upon the appellant for the $500 deposited with him by the appellees. Thereupon this suit was brought, not upon the assignment which Grant had made to the appellees, but in deceit, the damages being laid at $500; the theory being that this $500 had been obtained from the appellees by the appellant by virtue of the false representations as to what the paper of February 2d contained, and so they were damaged to this extent.

In the original petition it was averred that, at the time the February 2d contract was prepared, it was represented to the appellees that, although the contract called for cash, yet as a matter of fact Grant would not insist on cash, but would give the appellees time to pay the purchase price. The other usual allegations necessary in an action of deceit were made. A demurrer was interposed to this petition, and, after some contradictory rulings, the court finally sustained it. An amended petition was thereupon filed, in which it was averred that the appellant at the time the appellees signed the paper of February 2d represented to them that it provided for terms instead of cash, and that they had signed the paper relying on such representations. This amended petition also embraced

the other usual allegations necessary in an action of deceit. The appellant in his answer as amended traversed these claims of the appellees and cross-petitioned against the Grants for a real estate commission in the sum of $750, claimed to be due him for procuring the appellees as purchasers for this farm. The court allowed this cross-petition to be considered only to the extent that the appellant claimed a lien on the $500 in his possession to secure him in the payment of any commission which the Grants owed him in this matter. The Grants by their answer to the cross-petition of the appellant made common cause with the appellees. On the trial the court submitted to the jury only the controversy between appellant and appellees. The jury found for the appellees in the full amount they sued for, and judgment was entered on that verdict.

A good deal of seeming confusion in the briefs of counsel in this case will be cleared away if at the outset we fix our attention on the character of this suit. It was not one ex contractu. It was not based on the contract of February 2d, nor was it grounded on the assignment of Grant to the appellees of any claim he had on the $500 deposited with appellant. It was an action ex delicto—an action based on deceit.

From this flow at least two consequences: First, we need not inquire as to whether appellees were under the doctrine of the United Talking Machine Co. v. Metcalf, 164 Ky. 258, 175 S. W. 357; Same v. Metcalfe, 174 Ky. 132, 191 S. W. 881; White Sewing Machine Co. v. Smith, 188 Ky. 407, 222 S. W. 81; Brenard Mfg. Co. v. Jones, 207 Ky. 566, 269 S. W. 722, and cognate cases, bound to the Grants under the contract of February 2d or not, since it is entirely possible for them to be so bound, and yet have a cause of action sounding in deceit against a third party who by his actionable misrepresentations got them so bound. Secondly the court did not err in refusing to submit or decide the question of appellant's claim for a commission against the Grants. A cross-petiton is not allowed except upon a cause of action which affects or is affected by the original cause of action. Civil Code, sec. 96, subsec. 3. The claim for a commission neither affects nor is affected by the original cause of action herein sued on. Cf. Wells v. Boyd, 1 Duv. 366. Appellant is entirely at liberty to pursue, in an independent

action, any claim he may have against the Grants for this commission.

These matters being thus cleared away, we are next confronted by the appellant's contention that he was entitled to a peremptory instruction. He bases that contention necessarily on the proposition that, although it may be true that the contents of the paper dated February 2d were misrepresented by him to the appellees, yet, as the evidence shows they failed to exercise the slightest degree of care in protecting themselves against such misrepresentations, they cannot recover. At first blush, it would seem that a person guilty of fraud ought not to be permitted to say to the defrauded party, "You ought not to have believed or trusted me;" or, "You, yourself, were guilty of negligence." See Trimble v. Ward, 97 Ky. 748, 31 S. W. 864. It is true that deceit, like battery, is a willful injury, and that ordinarily in cases of willful injury the law imposes no duty of care upon the victim. Yet, in the great majority of cases in action of deceit, it is held that the plaintiff may be barred by negligence, and this is especially so in cases like the instant one. Without extending our inquiry beyond the case actually before us, we find that the considerations which have induced the courts under facts like those here present to hold the plaintiff to the exercise of some degree of care are as thus expressed in Cooley on Torts (3d Ed.), p. 933:

"Redress has often been refused to a party who claimed to have been induced by fraud to sign a contract or other paper whose contents were misread or misrepresented to him. The reasons for refusing relief in such cases are: First, that it invites perjury and subornation of perjury, if parties are allowed to set aside their contracts on parol evidence of having been misled into signing them. Second, it encourages negligence when relief is given against that which ordinary prudence would have protected against at the outset. Therefore, when one complains that he has been defrauded into signing a contract without reading it, and on the representation respecting its contents of the party whose interests were antagonistic to his own, the court is likely to say to him that what he complains of is his own folly, and against this the law cannot protect him."

In Kaiser v. Nummerdor, 120 Wis. 234, 97 N. W. 932, the Supreme Court of Wisconsin justifies the doctrine thus:

"It rests on the idea that one cannot be defrauded by an assertion of what he knows to be false, and that courts will presume that an ordinary person does know those things which are *obvious to ordinary observation.* . . . Hence courts will deny relief to him who shuts his eyes to that which is clearly apparent, if, knowing it, he could not have been deceived by defendant's misrepresentation." (Italics ours.)

In 37 L. R. A. 593, may be found a note collecting the authorities on this question. They amply support the text in Cooley, as does also the text in 26 C. J. 1150. The same principle has been applied by this court in actions to rescind contracts procured by such fraud as is alleged here, as may be seen in the cases of White Sewing Machine Co. v. Smith, supra; Brenard Mfg. Co. v. Jones, supra; United Talking Machine Co. v. Metcalfe, supra. In the last case, when reported in 174 Ky. 132, 137, 191 S. W. 881, 883, we said:

"One sui juris and in possession of his faculties, contracting at arm's length, and who is able to read and write, is not permitted by the law to rely exclusively upon the statements of the other contracting party as to the contents of a writing which the former signs. There must be something said or done by the party charged with the fraud which would be reasonably calculated to disarm or deceive one of ordinary prudence and to prevent him from using such diligence as an ordinarily prudent man would use in the execution of a contract under the same or similar circumstances. When, therefore, the law speaks of misrepresentations by the party charged with the fraud, it means that the representations must have been not only untrue, but also made under such circumstances as would be reasonably calculated to deceive one while exercising ordinary care for his own protection."

What will measure up to ordinary care, will of course vary as the facts of each case may vary. As Cooley in his book supra, page 934, says:

"But there is no inflexible rule to this effect, and it would be a reproach to the law if there were. The ways of fraud are indefinite in their diversity, and if into any one of them all the law refuses to follow for the rescue of victims, it will be in the direction of that one that fraudulent devices will specially tend. It can never be either wise or safe to mark out specific boundaries within which deceits shall be dealt with, but beyond which they shall have impunity; but each case must be considered on its own facts, and every case will have peculiarities of its own, by which it may be judged."

And so, whether a person fails to exercise ordinary care in failing to read a contract he is called upon to sign may depend on the extent of the confidence which he is entitled to place in the person procuring his signature. See 26 C. J. 1158; Cooley supra, 936.

Thus in the instant case it appears on the one hand that appellees had, without any fraud being practiced upon them, signed one offer embracing a cash transaction, that during their negotiations for a loan on the farm they proposed to buy, they had stated or had heard without protest appellant state that the transaction concerning the farm was to be a cash one; that their original petition did not deny the transaction was to be a cash one, but sought to avoid its effect; that the appellant and his stenographer testify that no different representations were made to the appellees at the time they signed the paper dated February 2d; and that appellees do not claim the contract was misread to them or that they did not have ample opportunity to read it, before they signed it. On the other hand, we have the facts that appellees were absolutely unable to go through with a cash transaction unless the realty which they owned was first disposed of; that appellant knew this, and appellees knew that he did know this; that appellees had listed their property with appellant for sale, and that he had not disposed of it for them, nor had it been reduced to cash, as all knew, when the paper of February 2d was signed; that at that time it was known that the Grants had agreed to take $15,750 for their farm so that the execution of the

paper of February 2d would be a practical consummation of the deal; that under such circumstances. appellees would most probably inquire about whether the transaction which would necessarily have. to be completed shortly after they signed the paper dated February 2d was to be on terms, for otherwise it would be impossible, as all knew, for them to complete it; that, having listed their property with appellant for sale, and knowing that he fully knew their financial standing, they thought they could rely on what he told them about the contract, and that they testify he did make the representations they said he did. Under such a state of the record, it was a question for the jury to say whether the representations were made, and, if so, whether the appellees exercised ordinary care under the circumstances in signing the contract without reading it. Hence it follows that the appellant was not entitled to a peremptory instruction.

However, the instruction of the court, as given, did not conform to the rule as we have found it to be. It failed to do so, in that it did not submit to the jury the question whether the appellees in signing the paper relying solely on the representations they claimed were made to them, and without reading the paper, exercised that degree of care which an ordinarily careful and prudent person would have exercised under like or similar circumstances. It, among other things, simply said that, if they signed it relying on the representations, they were entitled to recover. Thus was omitted the element of whether they exercised ordinary care in signing the paper without reading it. Because of this, the instruction was erroneous.

Appellant also claims that the amended petition was a "departure" from the cause of action set up in the original petition, and so was prohibited by section 101 of the Civil Code. Technically, of course, it was not a departure, since a departure occurs only in a reply or subsequent pleading. But its allegations were inconsistent with those set up in the original petition. The cause of action was not changed—it was still an action of deceit—but the facts to support it were alleged differently in the amended petition from those in the original petition. Appellees had the right, if the truth justified it, to amend their petition in this fashion. Cf. Civil Code, sec. 134; Foxwell v. Justice, 191 Ky. 749, 231 S. W. 509.

For the reasons herein stated, this judgment is reversed, with instructions to grant the appellant a new trial in conformity with this opinion.

Whole court sitting.