**Chase McCLURE and the Medical Arts Center, Inc., a Corporation, Appellants,**

v.

**George A. YOUNG and the George A. Young Company, a Corporation, Appellees.**

Court of Appeals of Kentucky.

Nov. 12, 1965.

H. David Hermansdorfer, Diederich & Hermansdorfer, Ashland, Wallace, Turner & Reed, Lexington, for appellants.

Stoll, Keenon & Park, Lexington, for appellees.

DAVIS, Commissioner.

This litigation results from various disputes which have arisen incident to the purchase of a building in Lexington by the appellants from appellees. For clarity we shall refer to appellant McClure as Mc-Clure; the appellant The Medical Arts Center, Inc. shall be designated as MAC. Appellee George A. Young will be referred to as Young, whereas the corporate appellee, The George A. Young Company, will be known as GAY. The specific questions presented in this appeal will be better understood after a preliminary statement of the background.

In 1957 Young organized the corporate appellant MAC. Into this venture he invested $800 in behalf of his mother, his sister and himself as the three organizers of MAC. Young and the same members of his family also had dominant ownership and control of corporate appellee GAY. Young's purpose in organizing MAC was to handle through it the construction of a medical office building in Lexington. Young was able to interest executives of Begley Drug Company in making an investment in MAC, and it is apparent that the primary concern of the Begley interests was to place an apothecary in the proposed medical building. The Begley interests acquired 530 shares of MAC's stock, which had no par value, but a "stated" value of $100 per share, as fixed at the organizational meeting of MAC's incorporators.

GAY contracted with MAC to construct the medical office building. MAC agreed to compensate GAY, as general contractor for the construction of the building, on a basis of cost of time, material, sub-contracts, labor and 5% for overhead, plus 10% profit. Shares of MAC stock were issued to GAY on a basis of $100 per share to pay GAY according to the construction contract.

In June, 1960, McClure began negotiations with Young for the purchase of the medical office building. It is evident that McClure's purpose was to buy a *building*— not a corporation. He had communicated with Young in response to an advertisement of Young (not GAY) to sell investment property. According to McClure, Young agreed to sell the MAC building to McClure for actual cost, less depreciation. Young denies that the selling price was predicated on cost less depreciation. McClure contends that Young represented to him that the actual cost was $1,054,000; that the depreciated figure, the sales price, would be $999,353.46.

After some negotiations and a couple of written instruments looking toward the completion of the transaction (the first two writings were abrogated by mutual consent), McClure agreed to purchase from GAY 3470 shares of MAC stock for an aggregate sum of $337,906.75, of which part was to be paid in cash and part evidenced by 14 notes. The same writing bound Mc-Clure to offer $53,000 for the 530 MAC shares held by the Begley interests. It was also stipulated in that contract that MAC had obligations of $95,843.25 (which Mc-Clure paid as a part of the overall consideration). The balance of the purchase price was represented by a first mortgage lien of MAC to Commonwealth Life Insurance Company in a sum of about $512,603.00. McClure did buy the Begley stock as agreed.

It will be noted that the mode of completing the transaction was NOT by a deed from MAC to McClure, but by McClure's acquisition of the entire capital stock of MAC. McClure said that he acceded to that procedure at the request of Young who indicated that it would be helpful to Young from a tax viewpoint. The closing date of the transaction was July 15, 1960.

Upon taking control of MAC, McClure caused his accountants to examine the books with a view to preparing an imminently due income tax return. Shortly after the tax return was filed McClure received "disquieting inquiries" from the U. S. Internal Revenue Service relating to building costs and depreciation allowances. This inquiry set off a chain reaction which culminated in the present litigation.

When McClure's auditors scrutinized the MAC books they concluded that the building costs had been extravagantly padded because of what the auditors conceived to be improper charges by GAY to MAC. Preliminary negotiations begun in June, 1961, between McClure and Young were not fruitful of settlement. On the contrary, McClure informed Young that he would not pay the outstanding notes as they fell due until an appropriate settlement of their differences was effected; Young denied any liability to McClure or MAC.

Thereupon, on July 6, 1961, GAY and Young filed this suit against MAC and McClure asserting a precipitation of the 14 lien notes, seeking judgment for the aggregate sum of the notes, together with an enforcement of a mortgage lien. McClure filed answer and counterclaim denying that he had refused to pay the notes, but admitting that he would not make direct payments upon them until the controversy was adjusted; he tendered into court a sum sufficient to defray such notes as would fall due during the course of the litigation. By his counterclaim and amendments to it, McClure asserted that Young had fraudulently misrepresented to him

that the depreciated cost of the building and its grounds was $999,353.46, when in fact the real depreciated cost was $925,001.50. He prayed recovery of the difference of $74,351.96. McClure also sought damages for alleged injury to his credit on account of the suit, but that phase of the matter is not presented on this appeal.

MAC also filed answer and counterclaim. In substance MAC asserted that Young, as the promoter of MAC, occupied a fiduciary relation toward MAC and, in violation of such relationship, Young and GAY had improperly obtained $206,761.96 from MAC. Specific details as to the items aggregating this total were set forth by MAC's pleadings, and proof was adduced respecting them.

After an extensive hearing the trial court, sitting without a jury, rendered judgment. First, the lower court adjudged that the 14 notes sued on were not in default, and denied recovery upon them to Young and GAY. Second, the judgment of the trial court was that McClure had not sustained the burden of proving his claim that Young fraudulently misrepresented the depreciated cost at $999,353.46. Finally, the trial court ruled that MAC could not recover on its claim because all of the stockholders of MAC—before the sale of the stock to McClure—had known of and acquiesced in the various transactions between GAY and Young and MAC.

The appellant, McClure, urges reversal as to his counterclaim on the ground that the trial court erred in holding McClure had not exercised prudence in examining the documents relating to cost of the MAC building.

Appellant MAC contends that the trial court erred in affording appellees the benefit of a defense which had not been pleaded.

We first examine the contentions of McClure as to his claim that Young fraudulently misrepresented to him the actual cost of the building and its appurtenant land.

As noted, McClure asserted that Young affirmatively told him that the cost of the building and land equaled $1,054,000. Young denied this. To bolster his claim, McClure presented in evidence a page from a legal pad tablet upon which McClure said that he had been taking notes during his first conference with Young. McClure points out that upon that yellow pad appears, in ink, the figures $1,054,000—that these figures are upside down as to the other figures on the sheet—and that the other figures on the page are in pencil and written by McClure. McClure asserts that the inked figures were inscribed on the paper by Young when it was apparent that McClure was having some difficulty in setting down the figures. Young did not deny that he wrote the inked figure on the yellow pad, but explained that the figure merely represented the total as shown at the foot of page 7 of an audit report prepared by an accounting firm.

Page 7 of that audit is in the record, and on it is reflected the cost of land and building as follows:

"Property and Equipment    Cost

Land                    $ 98,269.70
Building                 906,379.80"

■ It is true that the total of all assets shown on that page is $1,054,000, but the page does not purport to reflect that figure as the total cost of the land and building. The trial court laid heavy emphasis on the fact that McClure had complete access to the audit report, and found that McClure could not be heard to say that he had relied on Young's statements in face of the written audit report to the contrary. The court below resolved the issue against McClure on the basis that equity will give no relief to a complaining party who has means of knowledge of the truth or falsity of representations at hand, citing Mayo Arcade Corp. v. Bonded Floors Corp., 240 Ky. 212, 41 S.W.2d 1104; Farmers' Trust Co. of Harrodsburg v. Threlkeld's Adm'x., 257 Ky. 211, 77 S.W.2d 616.

■ Moreover, the trial court opined that "(O)ne entering into a contract must exercise ordinary care for his protection." In support of this the trial judge cited Kreate v. Miller, 226 Ky. 444, 11 S.W.2d 99, and Selke v. Stewart, 260 Ky. 442, 86 S.W.2d 83.

■ Additionally, the lower court pointed out that McClure testified that the price he paid for the property was reasonable, and that McClure said the property is worth more than he paid for it. It is our view that the finding of the chancellor with respect to the claimed fraudulent misrepresentation is amply supported by the record. We do not find that the holding of the lower court is clearly erroneous, and therefore we will not disturb it. CR 52.01.

The claim of MAC is based on its assertion that Young (and GAY, acting as Young's alter ego) occupied a fiduciary relationship to MAC, as its organizer and promoter, and must, therefore, account for alleged unconscionable and secret profits extracted from MAC by Young—and GAY. This legal concept finds its chief basis in Old Dominion Copper Min. & Smelting Co. v. Bigelow, 188 Mass. 315, 74 N.E. 653, 108 Am.St.Rep. 479. That authority has been cited with approval and followed in this jurisdiction. Datillo v. Roaten Creek Oil Co., 222 Ky. 378, 300 S.W. 854. See annotation at 85 A.L.R. 1262, et seq. Specific instances of alleged "plundering" of MAC by Young and GAY were alleged, and proof supporting the allegations was presented. As noted, MAC's claim on these accounts aggregated $206,761.96.

The trial court denied the claim of MAC in its entirety and based its ruling on the premise that the alleged "plundering" had been fully ratified by all of the MAC stockholders before McClure acquired any of the MAC stock. The chancellor ruled that the defense of ratification, although not pleaded, was available to Young and GAY on the theory that the parties had tried the issue, by express or implied con-

sent. CR 15.02. MAC vigorously challenges the propriety of the court's ruling that CR 15.02 is available to appellees here.

■ In our view of the case it is not necessary to resolve the application of CR 15.02 to the case at bar. Assuming, without deciding, that Young and GAY had "plundered" MAC before McClure acquired all MAC's stock, it is our conclusion that MAC, as now entirely owned by McClure, is in no position to complain. It is our view that the factual situation before us does not authorize application of the principles enunciated in Old Dominion Copper Min. & Smelting Co. v. Bigelow, 188 Mass. 315, 74 N.E. 653, 108 Am.St.Rep. 479. It will be recalled that McClure acquired the entire capital stock of MAC, not upon the basis of his buying corporate stock, as such, but rather as the vehicle or means through which he became the beneficial owner of the medical office building. So far as McClure was concerned, the only significant asset of MAC was the office building, along with its leases to the various tenants Young had already obtained. McClure could not have cared less whether Young or GAY, or both, had made improper charges against MAC respecting broker's commissions, interest charges, "finder's fees," and the like. McClure's prime concern was whether the office building was what it was represented as being—that is, whether he was acquiring it (by way of transfer to him of all the MAC stock) at cost less depreciation. This is not a situation in which the corporate stock of MAC was offered to the public (or in which previously unissued "treasury" stock is sold) with the actual or tacit representation that the corporate assets had been transferred to the corporation by the promoters at fair value. Hence, it was not necessary for the trial court to adjudge that the ratification defense had been made by virtue of CR 15.02, because there was no cause of action to which such a defense was necessary. All that McClure ever contracted for was the building; he did not contemplate that he would receive anything else. He took the stock of MAC in lieu of a deed. In this state of case we perceive that it is appropriate to disregard the corporate entity—MAC—and regard it as the alter ego of McClure, the sole owner of MAC's stock. See 18 Am.Jur.2d, Corporations, § 15, pp. 561–562. If McClure was deceived, it was with respect to his buying the building. That is the very issue which was resolved against McClure on his claim for misrepresentation as to the cost of the building, less depreciation. It was not within McClure's contemplation that when he acquired MAC's stock he would also acquire a windfall *chose in action*—a lawsuit for more than $200,000 in favor of MAC. Assuming that MAC had been shorn by its organizers, McClure bought the lamb sans wool; he cannot now complain that he should have acquired the wool too. All that McClure bought was MAC's stock, which he understood to represent the value of the building itself, and no more. He has acquired that. There is no equitable principle which would entitle him, either in his own name, or in the name of MAC, to obtain more than he bargained for.

■ Appellees have filed cross-appeal, asserting that it was error to adjudge the court costs as payable equally by appellants and appellees. We adhere to the rule that a court of equity has a judicial discretion in apportioning costs, and this court will not disturb the chancellor's findings as to costs apart from an abuse of that discretion. We conclude that there has been no such abuse of discretion here. See Johnson v. Johnson, Ky., 273 S.W.2d 558, and authorities there cited.

The judgment is affirmed on the original appeal and on the cross-appeal.