Michael YEAGER, et al Appellants

v.

Christine McLELLAN Appellee

No. 2003–SC–0180–DG.

Supreme Court of Kentucky.

Nov. 23, 2005.

David A. McCullough, Louisville, Counsel for Appellants.

Bruce A. Brightwell, Louisville, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

This dispute involves an action for breach of contract/breach of warranty based upon alleged misrepresentations made by the sellers of a home, Appellants Michael and Irene Yeager. Buyer, Appellee Christine McLellan, maintains that a "Seller's Disclosure of Property Condition" form (hereinafter "disclosure form") signed by Appellants misrepresents instances of basement water leaks, and that this form is specifically incorporated by reference as a warranty in the purchase contract. The Jefferson Circuit Court entered summary judgment in favor of the sellers, Appellants. The Court of Appeals reversed and remanded the case to the Jefferson Circuit Court.

After listing their residential property for sale, Appellants completed and signed the disclosure form pursuant to KRS 324.360. 201 KAR 11:350 sets forth administrative regulations relative to the disclosure requirement. 201 KAR 11:350 provides:

This disclosure is based solely on the seller's observation and knowledge of the property's condition and the improvements thereon. This statement shall not be a warranty by the seller or seller's agent and shall not be intended as a substitute for an inspection or warranty the purchaser may wish to obtain.

The disclosure form also includes the above language.

KRS 324.360 mandates that the disclosure form must contain information pertaining to the basement condition and "whether it leaks." KRS 324.360(3). The disclosure form in question contains a checklist of queries regarding the property. In response to the question asking, "Does the basement leak," Appellants checked "Yes." The follow up question asks, "If yes, when?" Appellants wrote, "March 1989 & 1997." The next question asks whether the leak has been repaired or treated. Appellants answered "No" to this question.

Paragraph 11.A of the purchase contract executed between Appellants and Appellee includes the following language:

Buyer acknowledges receipt of a Seller's Disclosure of Property Condition (as required by 201 KAR 11:350) from Seller. Seller represents and warrants to Buyer . . . that the information provided in the Seller's Disclosure of Property Condition is true, accurate and complete to the best of their knowledge. Seller and/or Buyer shall indemnify and hold harmless all the foregoing parties from any liabilities, damages, costs, fees and expenses resulting from any incorrect information provided herein, in the Listing Contract, or in the Seller's Disclosure of Property Condition.

The contract also contains a provision allowing the buyer to inspect the property and report to the seller substantial defects found by the inspection for repair by the seller. Appellee hired Inspection Group, Inc. to inspect the property. The inspection report mentions the existence of cracks in the basement wall and suggests further inquiry. Appellee made no further inquiry or request for repair, and proceeded to close on the property. Appellee alleges that she experienced problems with basement leaks soon after she moved into the house.

Less than three years after moving into the property Appellee brought an action against the sellers alleging breach of contract/breach of warranty and fraud. Appellee charged that Appellants falsely completed the disclosure form because the two

incidents listed (March 1989 and 1999) were not the only times that the basement had leaked. The Jefferson Circuit Court entered partial summary judgment in favor of Appellants, reasoning that the disclosure form clearly stated that it was not a warranty. Appellee voluntarily dismissed her fraud claim, and the partial summary judgment on the claim for breach of contract/breach of warranty was certified as final and appealable. The Court of Appeals reversed and remanded, holding that while the disclosure form in and of itself did not constitute a warranty, the parties specifically agreed to incorporate the disclosure form as a warranty in the purchase contract. The Court of Appeals remanded to the trial court to resolve the issue of fact as to whether Appellants lied on the disclosure form and thereby breached the warranty. We granted review.

## I.

The first issue that we must decide is whether a warranty exists in either the disclosure form itself, or the purchase contract. As we have noted above, both 201 KAR 11:350 and the disclosure form expressly state that a disclosure form does not constitute a warranty. Clearly, by itself, the disclosure form is not a warranty.

However, the purchase contract does contain a clause stating that Appellants warrant to Appellee that the information in the disclosure form is "true, accurate and complete to the best of their knowledge." In the absence of ambiguity, a written instrument will be strictly enforced according to its terms. *O'Bryan v. Massey–Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky.1966). However, a court may refuse to enforce a contract on grounds of illegality where the contract has a direct objective or purpose that violates the federal or a state Constitution, a statute, an ordinance, or the common law. *Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky.1954). This clause in the contract creates a warranty. The contract incorporates the disclosure form by reference and explicitly warrants the truthfulness and accuracy of the form and must be enforced as such. As the Court of Appeals correctly notes, the contract does not violate KRS 324.360 or 201 KAR 11:350 because the parties are in compliance with these provisions and merely sought to give greater weight to the disclosure form than was statutorily required. *See e.g. Munday v. Mayfair Diagnostic Laboratory*, 831 S.W.2d 912 (Ky.1992).

## II.

Although a warranty exists in the purchase contract, we must consider whether the contract was merged into the deed of conveyance. "The merger doctrine holds that all prior statements and agreements, both written and oral, are merged into the deed and the parties are bound by that instrument." *Borden v. Litchford*, 619 S.W.2d 715, 717 (Ky.App.1981). If the merger doctrine applies, then Appellee has no grounds for recovery under the warranty of the purchase contract. *Id.*

One exception to the doctrine of merger states that false and fraudulent misrepresentations do not merge. *Dunn v. Tate*, 268 S.W.2d 925 (Ky.1954). Appellee must establish the six elements of fraud by clear and convincing evidence in order to demonstrate that the warranty was a fraudulent misrepresentation to be excepted from merger. These elements are: a) a material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky.

1999). Appellee alleges that Appellants omitted instances of water leakage from the disclosure form, and that Michael Yeager failed to mention his belief that there was an underground spring under the property. Appellee cites to a deposition of Michael Yeager. Appellee makes sufficient allegations to allow the trial court to consider this factual issue. It is to be noted that Appellee dismissed an earlier fraud claim. However, Appellee may prove fraud only insofar as it relates to the fraud exception to the merger doctrine, which is relevant to Appellee's breach of contract/breach of warranty claim.

Appellee argues that the merger doctrine does not bar her claim because a hidden defect exception also applies. Appellee relies on *Ferguson v. Cussins,* 713 S.W.2d 5 (Ky.App.1986), and *Borden v. Litchford, supra.* However, Appellee's reliance on these cases is misplaced, as there is no hidden defect exception to the merger doctrine as it applies to express warranties and contracts. *Borden* involved the purchase of a new home. In discussing *caveat emptor,* the *Borden* court states that the merger doctrine does not apply to hidden defective conditions under an implied warranty. *Id.* at 717. *Ferguson* also does not involve an express warranty but instead cites to the above *Borden* proposition in a discussion of *caveat emptor.* Thus, in both cases, the notion of hidden defect directly relates to *caveat emptor* and implied warranty. There is no case law stating that hidden defect is a distinct exception to the application of merger to express warranties.

If Appellee can demonstrate that the fraud exception to the merger doctrine applies, then she may proceed on her breach of contract/breach of warranty claim. Accordingly, we affirm the Court of Appeals and remand to the circuit court for further proceedings consistent with this opinion.

LAMBERT, C.J., COOPER, SCOTT, and WINTERSHEIMER, J.J., concur.

JOHNSTONE, J., dissents by separate opinion in which ROACH, J., joins.

Dissenting Opinion by Justice JOHNSTONE.

Respectfully, I must dissent.

The majority concludes that the doctrine of merger applies in this situation, thus barring Ms. McLellan's claim unless she can prove fraud upon remand. Ms. McLellan had moved for summary judgment on the issue of fraud as well, but the motion was denied. I believe that the motion should have been granted in favor of the Yeagers, as Ms. McLellan had failed to present evidence of the requisite elements of fraud.

As noted in the majority opinion, there are six required elements to establish a claim of fraud: (a) a material representation, (b) which is false, (c) and which is known to be false or made recklessly, (d) made with inducement to be acted thereon, (e) which is acted thereon, and (f) causes injury. *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky.1999). "[A] claimant may establish a detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations." *Id.* at 469. Therefore, as Ms. McLellan ultimately entered into the contract, she had the burden of establishing that she was induced to act *due to* the Yeagers' misrepresentation, and that she would not have entered into the contract had she held comprehensive knowledge of the condition of the basement. In my opinion, Ms. McLellan has failed to provide any evidence that she acted in reliance upon the alleged misrepresentation. Furthermore, if she did act in reliance upon

the Yeagers' representation about the basement, she did so without justification.

At the outset, it must be pointed out that Ms. McLellan was never deposed in this matter. Without any evidence or testimony from Ms. McLellan, there is no basis upon which to conclude that she acted in reliance upon the Yeagers' representation. Having failed to demonstrate this required element of fraud, the Yeagers were entitled to summary judgment.

Furthermore, even construing the circumstantial evidence in a light most favorable to Ms. McLellan, there is no basis upon which a reasonable juror could conclude that she acted in reliance upon the representations about the basement. *See Rickert* at 468 (detrimental reliance may be established by circumstantial evidence). There is no dispute that Ms. McLellan was on notice that a problem with water existed in the basement. The issue is simply one of extent. She knew that water had backed into the basement on at least two occasions, and that the problem required the operation of three sump pumps. She was advised by her own professional home inspector to investigate the basement further, but chose not to. She requested no additional information or repairs from the Yeagers and proceeded with the purchase. Now, Ms. McLellan claims that if she were offered a single additional piece of information—that the basement had in fact backed up on more than two occasions— she would not have purchased the home. In light of the amount of information already in her possession concerning the defect, this self-serving contention is beyond belief. The plain and simple truth is that she was aware of a problem, chose to disregard it, and purchased the home anyway.

Nonetheless, even if Ms. McLellan was induced to enter the contract by the alleged misrepresentation, such reliance was neither justified nor reasonable. "The very essence of actionable fraud or deceit is the belief in and reliance upon the statements of the party who seeks to perpetrate the fraud. Where the plaintiff does not believe the statements—or where he has knowledge to the contrary—recovery is denied." *Wilson v. Henry,* 340 S.W.2d 449, 451 (Ky.1960) (internal citations omitted). Indeed, it has long been the law of Kentucky that, where ordinary inspection or investigation would prevent a deception, an action for fraud will not stand: "With respect to points plainly within the reach of every man's observation and judgment, and where an ordinary attention would be sufficient to guard against imposition, the want of such attention is, to say the least, an inexcusable negligence." *Moore v. Turbeville,* 5 Ky. (2 Bibb) 602 (Ky.1812). This principle applies no less to contracts for the sale of real property. *Borden v. Litchford,* 619 S.W.2d 715 (Ky.App.1981).

Admittedly, the doctrine of caveat emptor has been relaxed with respect to real estate sales because "[t]he ordinary home purchaser is not in a position to ascertain latent and nonobservable defects." *Borden* at 717. This shift away from a strict rule of "buyer beware" is evidenced, for example, in the more modern rule that a purchaser may maintain an action for fraud, despite the fact that the seller's misrepresentations would have been revealed by inspection of the public records. *See e.g., Cowles' Ex'r v. Johnson,* 297 Ky. 454, 179 S.W.2d 674 (1944). There is no indication, however, that the doctrine of caveat emptor has been so relaxed as to exclude willful disregard by a purchaser on notice of a defect. A person signing a contract cannot rely blindly on the other parties' statements, but must exercise ordinary care. *McClure v. Young,* 396 S.W.2d 48 (Ky.1965); *see also Kreate v. Miller,* 226 Ky. 444, 11 S.W.2d 99 (1928).

"It is generally held that one has no right to rely on representations as to the condition, quality, or character of property ... where the parties stand on an equal footing and have equal means of knowing the truth, or where a right of inspection was given but not utilized." 37 Am.Jur.2d Fraud and Deceit § 267 (2005). The public's interest in such a policy is self-evident: without it, nearly every sale would be subject to endless litigation by a disappointed purchaser.

Thus, I believe as a matter of law that Ms. McLellan was not justified in relying upon the representations set forth in the Yeagers' disclosure form, in light of the other information before her. The parties agree that she was on notice of the defect. The ordinary person in her position, having been informed of this issue and, in fact, specifically advised by her own expert to investigate it further, would refrain from executing a deed of conveyance without further inquiry. Had she engaged in further inspection, she might have learned the actual extent of the defect. Nothing prohibited her from engaging in such an investigation. But she chose not to, and the law dictates that she did so at her own risk.

A review of cases from other states reveals that Ms. McLellan's claim of fraud would be rejected in nearly every one. *See e.g., Smith v. Stanley,* 223 Ga.App. 334, 477 S.E.2d 618 (1996) (concluding that purchasers could not justifiably rely upon any representations or absence of representations concerning the effect of interior flooding as element of passive concealment fraud, where roof line, drainage from roof, and grading of the area suggested proclivity for flooding, and where purchasers received notice that the home was in a flood zone and chose not to perform an inspection of the house, instead relying on bare assertions of sellers); *Clouse v. Gordon,* 115 N.C.App. 500, 445 S.E.2d 428 (1994) (sellers of real estate did not commit fraud concerning the possibility of flooding, where purchasers independently chose not to inspect property and where reasonable diligence by purchasers would have revealed that the property stood on a floodplain); *Pagano v. Krohn,* 60 Cal.App.4th 1, 70 Cal.Rptr.2d 1 (1997) (where water intrusion problem was a matter of public record within purchaser's diligent attention and general water intrusion problem existed in area of home and was disclosed to purchaser, purchaser could not maintain action for fraud against vendor as subsequent water intrusion in her unit was simply an elaboration of a disclosed fact); *Connor v. Merrill Lynch Realty, Inc.,* 220 Ill.App.3d 522, 163 Ill.Dec. 245, 581 N.E.2d 196 (1991) (summary judgment in favor of home seller was appropriate in spite of buyers' allegation that seller had actively concealed evidence of basement flooding, where seller made no attempt to hide water marks in basement, and such marks were fully observable to purchaser, and seller in fact admitted prior to sale that there had been significant amount of water in the basement); *Berger–Vespa v. Rondack Building Inspectors Inc.,* 293 A.D.2d 838, 740 N.Y.S.2d 504 (N.Y.App.Div.2002) (buyers' fraudulent concealment claim concerning water in the basement properly failed where buyers personally observed dampness in basement and home inspection report contained reference to such dampness, but buyers declined to inspect further and proceeded with purchase nonetheless).

I find most persuasive a factually analogous case from our neighboring state of Ohio. In *Cardi v. Gump,* the purchaser claimed that the seller fraudulently misrepresented the extent of water damage in a basement. 121 Ohio App.3d 16, 698 N.E.2d 1018 (1997). The seller's disclosure form indicated that the basement had

no current water leakage or other defects. But the purchaser noticed high water marks in the basement, and two inspectors likewise noted the problem. In fact, both inspectors advised the purchaser to pursue the drainage issue with the seller, but the purchaser did not. After the purchaser took possession, the basement flooded. The Court of Appeals of Ohio concluded that the purchaser was not entitled to summary judgment on the issue of fraud because, in light of the facts readily ascertainable to the purchaser and the suggestions of his inspectors, he had failed to "show justifiable reliance upon the representations of [the seller]." *Id.* at 1022–23.

I find no reason to depart from the well-established and widely recognized rule that a buyer may not claim fraud with respect to the sale of a home when that buyer was informed of the defect at issue, had ample opportunity to inspect the defect, was in fact specifically advised to inspect the defect, but chose to purchase the home anyway. Ms. McLellan has failed to establish even a prima facie case of fraud, and the Yeagers were entitled to summary judgment on that issue.

ROACH, J., joins this dissenting opinion.