**Mark ROSS and Christine Ross, Appellants,**

v.

**Ralph D. POWELL and Deborah Powell, Appellees.**

No. 2004–SC–0008–DG.

Supreme Court of Kentucky.

Nov. 22, 2006.

Andrew Dail Desimone, Phillip M. Moloney, Sturgill, Turner, Barker & Moloney, PLLC, Lexington, Counsel for Appellants.

Carroll M. Redford III, Miller, Griffin & Marks, PSC, Lexington, Counsel for Appellees.

Opinion of the Court by Justice WINTERSHEIMER.

This appeal is from an opinion of the Court of Appeals affirming the summary judgment granted in favor of the sellers, Ralph D. and Deborah Powell. The circuit judge found that adequate and complete disclosures were made by the Powells. Further, Mark and Christine Ross relied on their own professional inspections as the basis of the decision to purchase the property.

The questions presented are whether the Court of Appeals was clearly erroneous in affirming the summary judgment based on the evidence; whether the record is sufficient for the Rosses to survive summary judgment and prevail on their misrepresentation claim and whether the decision of the Court of Appeals is incorrect in view of a recent decision of this Court.

Mark and Christine Ross moved to Lexington from Iowa after the husband, a neurologist, accepted a position at the University of Kentucky Medical Center. They had lived in Iowa for 15 years and in Chicago before that and they claimed to be unfamiliar with termites. The sellers, Drs. Ralph and Deborah Powell are pathologists and both were formerly employed at the University of Kentucky Medical Center. They were selling the residence in question because Deborah Powell had accepted a job as Dean of the University of Kansas Medical College. Ralph Powell accepted a position at the University of Kansas Medical College as a professor of pathology.

The University of Kentucky arranged for a realtor to show Dr. Ross properties around Lexington, one of which was the residence owned by the Powells. Ulti-

mately the Rosses made a written offer to purchase transmitted through their agent to the agent of the Powells. The Powells counter offered through their agent with a purchase price of $300,000 which was accepted by the Rosses. Because of the age of the house involved, 20 years, the real estate agents both suggested that the residence be professionally inspected for termites before listing. The Powells agreed.

Dr. Powell arranged for a representative of T.J. Neary Insect Technologies to inspect the house. The inspection indicated evidence of termites but Dr. Powell was assured that there was no evidence of damage. Neary recommended that the residence be treated and gave Dr. Powell the names of two pest control companies. Dr. Powell contacted B & E Pest Control. Shortly thereafter the Powells listed their home for sale and signed a seller disclosure of property condition form pursuant to KRS 324.360. The Powells disclosed that the roof had leaked, had substantial damage and had been repaired. They also revealed that the basement had leaked and had also been repaired. On a form provided by the Lexington–Bluegrass Association of Realtors, Dr. Powell also indicated that there had been evidence of termite infestation in May 1997 but no apparent damage had been found. It was also indicated that the residence was scheduled to be inspected by B & E Pest Control on June 3, 1997. That firm confirmed that termite activity in the debris under the house but reported only minor visible damage. The home was treated for termites on June 27, 1997. The Powell family moved to Kansas during the month of June.

Upon learning that the residence had been the subject of a termite infestation, the Powells advised their agent that they were no longer interested in the property. However the real estate agents continued in discussions about the possible sale and the Rosses were assured that the termite infestation was a minor problem and that it had been professionally treated. Ultimately, the Powells rejected the offer to purchase and made a counteroffer which the Rosses accepted. Pursuant to the inspection provision of the real estate contract, the Rosses hired Pruitt Inspection Company for a whole house inspection in December of 1997. Pruitt reported no visible evidence of structural or physical damage to the house. In February 1998, Elite Pest Control Company was employed by the Rosses to inspect the property. Elite reported that there was visible evidence of wood destroying insect infestations by carpenter ants and visible evidence of previous professional treatment for wood destroying organisms. The company recommended additional treatment.

The Powells had never returned to the home after June 1997, and the Rosses conducted a final walk-through inspection before the closing in March of 1998. Notwithstanding the report regarding the termite inspection in February 1998, the transaction was closed on March 6, 1998.

On February 3, 1999, the Rosses filed this action against the Powells, Pruitt and Elite claiming fraud against the Powells because they had failed to disclose their knowledge that the subject home had termite damage and further failed to have the home properly treated for termite infestation as represented. All claims against Pruitt and Elite were dismissed with prejudice by an agreed order. The circuit judge granted the motion by the Powells for summary judgment. The Rosses appealed to the Court of Appeals which affirmed the decision of the circuit judge holding that there was insufficient evidence to clearly and convincingly demonstrate that the Powells materially misrepresented the condition of the property and

that the Rosses relied on professional inspections which they caused to be made on the property rather than the representations by the Powells. This Court accepted discretionary review.

### I. Summary Judgment

The Rosses argue that the circuit judge erred by granting summary judgment in favor of the Powells. We do not agree.

Summary judgment is authorized by CR 56.01 et seq. and is intended to expedite the disposition of cases. If the grounds provided by the rule are established, it is the duty of the trial judge to render appropriate judgment. The basis for summary judgments involve:1) there is no genuine issue as to any material fact; and 2) that the moving party is entitled to a judgment as a matter of law. As originally noted in *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky.1985), and later in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991), as well as in *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky.1991), the summary judgment procedure is not a substitute for trial. *See also City of Florence v. Chipman*, 38 S.W.3d 387 (Ky.2001), for an extended discussion of the application of the summary judgment rule.

Suffice it to say that the circuit judge must examine the evidentiary matter, not to decide any issue of fact, but to discover if a real or genuine issue exists. All doubts must be resolved in favor of the party opposing the motion The movant should not succeed unless a right to judgment is shown with such clarity that there is no room left for controversy and it is established that the adverse party cannot prevail under any circumstances.

*Steelvest, supra*, originally stated that the test would include the word "impossible" for the non-moving party to prevail at trial. This Court later clarified that the word "impossible" is used in the practical sense and not in the absolute sense. *Perkins v. Hausladen*, 828 S.W.2d 652 (Ky. 1992). The party opposing a summary judgment can defeat it with some affirmative evidence to show the existence of a genuine issue of material fact. As noted in *Chipman, supra*, this Court stated in *Hoke v. Cullinan*, 914 S.W.2d 335 (Ky. 1995), that "contrary to the view of some, our decision in Steelvest ... does not preclude summary judgment." If the litigants are given an opportunity to present evidence which reveals the existence of disputed material facts and upon the trial court's determination that there are no such disputed facts, summary judgment is appropriate. The differences between the federal and state approach to summary judgment are further outlined in *Chipman, supra*.

■ Here, the Rosses claim that the Powells committed fraud by materially misrepresenting the condition of the leaky roof of the residence and the presence of live termites along with extensive termite damage in order to induce them to purchase the residence. As correctly noted by the Court of Appeals, the evidence necessary to establish fraud is set out in *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464 (Ky.1999), where the court held as follows:

> (T)he party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. (Citation omitted.)

Our review of the record indicates that the Powells informed the Rosses in the completed disclosure form that the leaking

roof had been repaired. They indicated that the roof was not leaking at the time of their disclosure on June 3, 1997. The Powells also advised the Rosses that the evidence of termite infestation had been found in May 1997 and that remedial treatment had been scheduled. The circuit judge determined that these disclosures were sufficient to overcome the claim of fraud by the Rosses. The circuit judge also concluded that the Rosses could not show that false or reckless misrepresentation had been made with respect to the alleged termite damage because the Powells had been assured by professionals that no termite damage existed at the time of the inspection. Thus the circuit judge held that the fraud claim failed as a matter of law.

Upon a careful review of this extensive record we must agree with the Court of Appeals and the circuit judge that there is insufficient evidence to clearly demonstrate in a convincing fashion that the Powells materially misrepresented the condition of the residence. There was no evidence to show that the disclosures were untruthful or misleading when they were made. In addition, the Rosses paid for an independent whole house inspection and a separate specialized professional termite inspection prior to the closing. The Rosses also admit that they had carefully examined the premises and that they had relied completely on their own judgment and the judgment of their inspectors.

█ Consequently, the statements by the Rosses and the inspections establish that they did not rely on representations by the Powells. The Rosses were aware that a serious carpenter ant infestation had been observed as a result of the Elite inspection shortly before the closing. Thus, we must conclude that the Rosses were on notice of a potential new problem with the house before closing the deal.

Accordingly, we must conclude that it would be practically impossible by any legal definition of those terms for the Rosses to prove the elements of fraud or misrepresentation at a trial. The Court of Appeals and the circuit judge did not err in regard to the summary judgment in favor of the Powells.

## II. *Yeager v. McLellan*

*Yeager v. McLellan,* 177 S.W.3d 807 (Ky.2005), addresses the adequacy of disclosure where the Yeagers had disclosed occasional basement leakage. As in *Yeager,* the disclosure by the seller was sufficient to require further inquiry from professional inspection companies. In *Yeager,* the inspection professional noted the cracks in the basement wall and recommended further review, but the buyer requested no further repairs.

In this case, the buyers, the Rosses, responded to the disclosure by retaining Pruitt Properties Inspection, Inc., which found no visible evidence of structural damage in December of 1997, and the Elite Pest Control Company, which in February of 1998, reported visible evidence of both carpenter ants and recommended a treatment program. Ultimately, the treatment cost $200. In addition, prior to the relocation by the Powells to Kansas in June of 1997, they had retained B & E Pest Control to treat the house for the termite problem. The Rosses, who lived in Iowa, proceeded to close the transaction in March 1998, soon after which they discovered the extent of the real damage. The repair cost exceeded $103,000. The Yeager case is significantly different from this case. In *Yeager* the buyer voluntarily dismissed her fraud claim at the trial level. The matter was then appealed and the motion for summary judgment was for a breach of contract by the buyer. The

claim here is one of fraud and/or misrepresentation.

The authorities cited by the Rosses, *Bolling v. Ford,* 213 Ky. 403, 281 S.W. 178 (1926) and *Wynn v. Wynn,* 689 S.W.2d 608 (Ky.App.1985), are unconvincing and distinguishable. Neither is applicable to the situation presented by this case.

An examination of the evidence in the record indicates that it is insufficient for the Rosses to be able to survive summary judgment and prevail on their misrepresentation allegation. The cases presented by the Rosses relate to a situation where a party owes a fiduciary duty or possesses some superior knowledge, neither of which are factual issues in this case.

The Powells made full disclosure on the appropriate forms when they were completed. The disclosure forms were not required to be filled out by the seller and any reliance on them is specifically disclaimed within the contractual documents which are part of this transaction.

In the final analysis, this case comes down to the sufficiency of the evidence to support a possible jury decision as to alleged fraud on the part of the Powells. The decision in *Yeager* regarding the fraud exception to the merger doctrine has no impact on this decision. The fact that the results are different between buyer and seller in this case, compared to the *Yeager* case, is of no consequence because of the differing factual situations.

The decision of the Court of Appeals which affirmed the granting of the summary judgment by the circuit court is affirmed.

All concur.