HELENE N. WHITE, Circuit Judge,
dissenting.
I respectfully dissent. I would grant Gadlage’s motion to certify to the Kentucky Supreme Court the question whether a violation of the Kentucky Supreme Court Rules can form the basis of a wrongful-termination claim as a public — policy exception to the employment-at-will doctrine.
Neither the Kentucky Supreme Court or its courts of appeals have addressed this question. However, two recent Kentucky circuit-court decisions squarely answered the question in the affirmative, see Greissman v. Rawlings & Assoc., No. 12-CI-00744 (Oldham Cir. Ct. Apr. 8, 2013); Isaacs & Isaacs, PSC v. Rigor, No. 05-CI-7688 (Jefferson Cir. Ct. Oct. 18, 2010).
I do not agree that Gadlage’s complaint fails to state a plausible claim. Accepting the allegations as true, as we must, Gadlage’s complaint pleaded sufficient facts to raise a plausible inference of wrongdoing. See 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B., 727 F.3d 502, 504 (6th Cir.2013) (noting that under Iqbal and Twombly a plaintiff is required “to plead enough ‘factual matter’ to raise a ‘plausible’ inference of wrongdoing”).
The verified complaint alleged that Winters & Yonker “primarily represents individuals with personal injury claims sustained in motor vehicle accidents,” that “associate attorneysf] job duties include traveling to the home of new clients, conducting a thorough interview of the client, and having the client sign various forms including a contract of representation,” that Winters & Yonker “specifically instructs their associate attorneys to use this ‘sign up’ process as an opportunity to get clients to seek medical care at Kentucky Spine and Rehab,” which is owned and operated by Florida chiropractor Dr. Gary Kompothecras, that Kompothecras “advertises in Florida and Kentucky, not as a chiropractor, but as a ‘medical and lawyer referral service’ under the pseudonym '1(800) ASK-GARY” and that Kompothecras “refers hundreds of Kentucky injury patients to Winters & Yonker.” Gadlage’s complaint alleged that “[i]n return Kompothecras/1 (800) ASK-GARY expects hundreds of referrals from Winters & Yonker to his Kentucky medical clinics.” Gadlage “found that it was more difficult to successfully resolve injury claims for individuals who treated at 1(800) ASK-GARY clinics, and therefore believed it was in the best interest of his clients and their claims to seek medical treatment with providers other than 1(800) ASK-GARY clinics.” PID 5. Gadlage “refused to engage in the quid-[pro-quo] referral arrangement mandated by Winters & Yonker and its agents,” and “believed that referring his clients to Kentucky Spine and Rehab created a third party conflict of interest under the Kentucky’s Supreme Court Rules.” Gadlage alleged that shortly after he and other associates were shown a spreadsheet indicating that he was the associate who most often did not refer cases to Kentucky Spine & Rehab, his employment was terminated. His complaint alleged that “[a]s a result of his refusal to place Winters & Yonker and 1(800)ASK-GARY/Kentucky Spine and Rehab’s financial interest above the interests of his clients,” his employment was terminated. PID 6.
*670 Gadlage’s counsel would have been well advised to cite specific Supreme Court Rule(s) in the complaint. But the Winters & Yonker firm was not baffled; its own motion to dismiss identified a specific Supreme Court Rule: “it appears to be [Gadlage’s] current claim that a referral to Kentucky Spine and Rehab might violate SCR 3.130(1.7)(a).” PID 29. The conclusion that Gadlage’s complaint did not state a claim plausible on its face because it failed to cite a specific Supreme Court Rule is unfounded under these circumstances.
Finally, I note that during the pendency of this appeal this court affirmed another case Gadlage relied on below, Martello v. Santana, 874 F.Supp.2d 658, 670 (E.D.Ky. 2012), aff'd 713 F.3d 309 (6th Cir.2013), rejecting the argument that public policy can be created only by the Kentucky Legislature and not the Supreme Court of Kentucky:
Martello argues that public policy can only be created by the Kentucky Legislature and not by the Supreme Court of Kentucky. However, Kentucky courts have held that, in the absence of legislative guidance, courts may determine public policy. Yeager v. McLellan, 177 S.W.3d 807, 809 (Ky.2005)....
The Kentucky bar is a mandatory unified bar and the Kentucky Rules of Professional Conduct are public policy set by the Kentucky Supreme Court. Ex parte Auditor of Pub. Accounts, 609 S.W.2d 682, 689 (Ky.1980). These attorney standards are not created only “for the private benefit of the legal community.” Id. (noting the Kentucky Bar Association’s mission is to maintain “a high standard of professional competence” and help promote improvement of the judicial system); Kentucky Bar Ass’n v. Chesley, 393 S.W.3d 584 (Ky.2013). The Kentucky Rules of Professional Conduct require lawyers to meet many ethical standards to ensure they properly represent their clients, the public. SCR 3.130 (preamble). Under Kentucky Rule of Professional Conduct 5.4 “[a] lawyer or law firm shall not share legal fees with a nonlawyer.... ” Id. at 3.130-5.4 (professional independence). Here, Martello was not an attorney at any point during her work with Santana. She has a law degree, but has never been admitted to any state’s bar. Thus, the fee-sharing contracts violate Rule 5.4.
Martello, 713 F.3d at 313-14 (emphasis added).
Two on-point Kentucky circuit-court decisions favor Gadlage’s position as does Martello. Our task is to “ascertain from all available data what the state law is and apply it.” General Elec. Co. v. Sargent & Lundy, 916 F.2d 1119, 1125 (6th Cir.1990). I disagree with the majority that we have a reasonably clear and principled course to follow based on 25 to 30 year-old Kentucky Supreme Court decisions that do not address the question presented and would thus grant Gadlage’s motion to certify the question.